### WALTER C. TOWNSEND *vs.* CITY OF BOSTON.

Suffolk. November 11, 1904. — January 7, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Carrier. Municipal Corporations. Boston.*

A city operating a ferryboat as a carrier of passengers and their property for hire can be found liable for injuries to a passenger and his horse and wagon caused by a large wagon with a heavy load drawn by two horses sliding backward into the plaintiff's team down a drop one hundred and fifteen feet long leading up a steep incline to the wharf at the place of landing, if it appears, that there was a motor with a gearing in a large headhouse there which often was used to help heavy teams up the drop and was used after the accident to draw up the load

which slid back, and if the superintendent of ferries testifies that it was the custom for deck hands to follow the teams and " chock " them, that is, to be ready to block them in case they should roll back or get stuck on the drop, and that blocks laid at the end of the boat were provided for that purpose, and if it also appears that the driver of the heavy team called out to one of the deck hands to " block " him as he started up the drop.

A city operating a ferryboat as a carrier of passengers and their property for hire is liable for injuries to a passenger and his horse and wagon caused by the neglect of its agents or servants to make reasonable provision for the passage of teams from the ferryboat to the wharf at the place of landing, even if the negligence of a third person contributed to the injuries.

Whether a passenger on a ferryboat is in the exercise of due care in starting with his horse and wagon up a steep drop leading to the landing place when a heavy team is two thirds or three quarters of the distance up the drop and more than fifty feet ahead of him, and he sees a deck hand standing there whose duty it is to " block " teams going up the drop and who has been asked by the driver of the heavy team ahead to " block " him and attempts to do so when it is too late, is a question of fact for the jury.

TORT for injuries to the plaintiff and his horse and wagon while a passenger on a ferryboat operated by the defendant as a carrier of passengers and their property for hire caused by the alleged negligence of the defendant in failing to block the wheels of a heavy team ahead of the plaintiff on the drop of the defendant's slip at that part of Boston called East Boston, in consequence of which the heavy team backed down upon the plaintiff, causing the injuries. Writ in the Municipal Court of the City of Boston, dated April 8, 1901.

On appeal to the Superior Court the case was tried before *Fox,* J., who ordered a verdict for the defendant. The plaintiff alleged exceptions.

*E. S. Townsend,* for the plaintiff.

*S. M. Child,* for the defendant.

KNOWLTON, C. J. The plaintiff was a passenger, with his horse and wagon, upon a ferryboat crossing from Boston to East Boston on October 24, 1900. The ferry is owned and operated by the city of Boston, which purchased it of the East Boston Ferry Company under the St. 1869, c. 155, and with it the franchise of the corporation. The bill of exceptions says : " It was admitted that the city of Boston was a common carrier of passengers and their property for hire across said ferry." It was proved that tolls were charged for carrying passengers. Under this statute the city could maintain and operate a ferry, in part for profit, and be subject to all the liabilities of a com-

mon carrier, although there is alternative authority to use it otherwise. In the absence of other proof in regard to the use and management of the ferry by the city, we must, under the admission above quoted, hold the city subject to the ordinary duties and liabilities of a common carrier.

A little in front of the plaintiff's horse on the boat was a large wagon drawn by two horses, containing a load of five tons of fish. The tide was very low, and on reaching East Boston, a drop one hundred and fifteen feet long was let down upon the boat, up which there was a steep ascent to the wharf. This heavy team started up the drop, and when it had gone about two thirds or three quarters of the distance, the horses stopped, and the wagon soon ran back and collided with the plaintiff's horse which was following. This suit was brought to recover damages for the consequent injuries. The judge directed a verdict for the defendant, in part, as we understand, on the ground that the city owed the plaintiff no duty to make provision against the running back of the team in front of him, and in part on the ground that he was not in the exercise of due care.

It was testified that there was a motor with gearing in a large headhouse there, that often was used to help heavy teams up the drop, which at low tide was very steep, and that was used to draw up this load of fish after the accident. The superintendent of ferries also testified that it was a custom and practically the rule for deck hands to follow the teams and to " chock " them, that is, be ready to " block " them in case they should roll back or get stuck on the drop. He also said that blocks laid at the end of the boat are provided for that purpose. There was testimony that the driver of the fish team called out to Donovan, one of the deck hands, to " block " him, as he started up the drop, and the jury might have found that there was negligence on the part of the deck hands in failing properly to do this.

We have no doubt that it was the duty of the city, as a common carrier for hire, upon the facts stated in the bill of exceptions, to make reasonable provision for passage from the boat to the wharf by teams, and we are of opinion that it was a question for the jury whether the defendant's agents or servants neglected this duty. If the defendant's negligence was a direct and

proximate cause of the accident the defendant is liable, even if the negligence of a third person contributed to the injury.

We also are of opinion that it was a question for the jury whether the plaintiff was in the exercise of due care. According to the testimony he did not start his horse until the other team had got two thirds or three quarters of the distance up the drop, and he was stopping fully fifty feet behind the fish team when it began to roll back. Other teams were crowding up behind him. As he started to go up he saw Donovan, who had been asked to " block " the team, standing there, and Donovan afterwards, according to the testimony, got a small block and attempted to do it when it was too late.

We are of opinion that the evidence should have been submitted to the jury.

*Exceptions sustained.*