(54 Misc. 445)

## SCHELL v. TOWN OF GERMAN FLATTS.

(Supreme Court, Trial Term, Herkimer County. April 1, 1907.)

1. BRIDGES—WHAT CONSTITUTES BRIDGE.

 A structure of masonry having perpendicular walls on either side, rising 12 to 15 feet from the ground, with five arches of 12 feet span, and at the top a roadway of dirt and gravel, about 41 feet in width, 479 feet in length, and having on either side a railing, the structure occupying a place between a bridge crossing a river and one crossing a canal, thereby making a continuous roadway, being built across low lands, covered with running water when the river overflows its banks, and at nearly, if not quite, all other times, with pools of greater or less depth and number, is a bridge.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Bridges, § 2.]

**2. SAME.**

The term "bridge" includes, not only the structure spanning the chasm over which it is located, but also the approaches by which access to the bridge is obtained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Bridges, § 2.]

**3. SAME—DEFECTS—LIABILITY FOR INJURIES.**

Under Village Law, Laws 1897, p. 414, c. 414, § 142, continuing the control of bridges with the commissioner of highways of the town wherein the bridge is situated, unless the village itself shall have assumed the whole or part of such expense, where a bridge was built before the creation of a village, and it did not appear that the town authorities had made repairs since the formation of the village, the liability for personal injuries resulting from a defect in the bridge rested on the town, and not on the village.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Bridges, § 82.]

**4. NEGLIGENCE—PERSONAL INJURIES—DEFENSES—CONCURRING NEGLIGENCE.**

The concurring negligence of a third person is no defense, if the accident would not have occurred except for the negligence of the defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 75.]

**5. BRIDGES—DEFECTS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.**

Whether plaintiff, who was injured while riding a bicycle over a bridge. was guilty of contributory negligence, *held* a question for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Bridges, § 120.]

Action by Jacob Schell against the town of German Flatts. Defendant's motion for nonsuit denied.

Eugene A. Rowland, for plaintiff.

Frank A. Schmidt, for defendant.

ROGERS, J. At the close of the evidence the defendant moved for a nonsuit, specifying various grounds. The determination of the motion was reserved until after the verdict, pursuant to section 1187, Code Civ. Proc. The verdict was for the plaintiff.

The structure on which the plaintiff received the injury complained of was within the bounds of the village of Mohawk, which is within the town of German Flatts. The defendant contends that, being within the village, the town cannot be held liable for want of repair, because the village law makes the corporation a special road commissioner district. Village Law, Laws 1897, p. 414, c. 414, § 142. By reference to the statute it will be seen that the control of bridges continues with the commissioner of the highways of the town in which the bridge is situated, unless the village itself shall have assumed the whole or part of such expense—a condition not shown to exist here. The plaintiff's contention is that the place of the accident was a "bridge," within the meaning of the statute, and therefore under the jurisdiction of the highway commissioner of the town.

This structure occupied a place between a bridge crossing the Mohawk river and a bridge crossing the Erie Canal, thereby making a continuous roadway running north and south. It is built across low lands, covered with running water when the river overflows its banks, and at nearly, if not quite, all other times water stands upon the lands thus crossed in pools of greater or less depth and number. The structure is of masonry, having perpendicular walls on either side, rising 12 to 15 feet from the ground below, with five arches of 12 feet

span. At the top the roadway is of dirt and gravel, the surface of which is slightly above the coping of the walls on either side and practically on a level with the floors of the canal and river bridges. Its width, all told, is about 41 feet, and on each side is a railing, about 3 feet from the outer edge, leaving a space within the railings for travel of 35 feet. From the canal bridge to the river bridge is a distance of 479 feet. This, it seems to me, constitutes a "bridge," within the meaning of the statute. 5 Cyc. 1052; Whitall v. Freeholders, etc., 40 N. J. Law, 302, 305.

The term "bridge" includes not only the structure spanning the chasm over which it is located, but also includes the approaches, by which access to the bridge is obtained; such approaches being as much a part of the bridge as the bridge itself. Commonwealth v. Inhabitants of Deerfield, 88 Mass. 449, 455; Rex v. Inhabitants, etc., 7 East, 588, 598; Whitcher v. Summerville, 138 Mass. 454; Carpenter v. City of Cohoes, 5 Wkly. Dig. 227; Id., 81 N. Y. 21, 37 Am. Rep. 468. It may be added that, while the evidence does not satisfactorily show when the bridge was built, it seems to have been before the village was created. It does not appear that the town authorities have made repairs since the formation of the village. The liability, therefore, if any, must be placed upon the town, rather than the village.

The westerly side of the bridge has a substantial iron rail, nearly 30 inches in height. On the easterly side wooden posts have been set, to which is affixed a narrow board or plank; the lower edge slightly below the surface of the dirt road, and the top coming 2 or 3 inches above the surface. At about 18 inches above this plank are nailed 2x4 string pieces the entire length of the structure. The evidence shows that, some months before the happening of the accident, one of the rails, covering a space of about 12 feet in length, that had been nailed at either end to a post and to one in the middle, disappeared. This was not far from the center of the bridge, and was immediately over one of the arches. The absence of this rail is the defect complained of, which is alleged to have caused the plaintiff's injury.

As has been stated, the roadway between the railings was about 35 feet. It is nearly level, hard, and at the time of the accident was smooth, except for the deposit of some gravel at the canal bridge end, which was not in such quantity as to interrupt traffic. On the easterly side, but substantially on the same level as the part used by wagons, was a smooth path 3 or 4 feet wide, much frequented by bicycle riders and footmen, and called a "cycle path," although any part of the road, not temporarily obstructed, could be and frequently was traversed by wheelmen. The road was much traveled, both by teams, pedestrians, and wheelmen, particularly in the early morning and late in the afternoon, by people going to or from their work at nearby factories. On the morning of the 6th of October, the plaintiff, as was his custom, started to cross the bridge from the north. He was in the company of and riding behind another wheelman. They were moving along the easterly edge of the bridge, and, when nearly opposite the point from which the rail had disappeared, overtook three pedestrians traveling in the same direction, gave them warning of the approach, and two of the three persons walking stepped to the right

and one to the left. The leading wheelman passed, when one of the two, who had stepped to the right, returned to the center of the path, not appreciating that another wheel was coming. A collision occurred, the plaintiff was thrown from his wheel over the side of the wall, where he caught on the coping stones with his hands and momentarily held himself suspended, but soon let go his hold and fell to the bottom, some 12 or 15 feet, receiving serious injuries, which resulted in the amputation of one of his legs at a point midway between his knee and ankle.

The defendant contends that the absence of the rail was not a defect, that the accident was not one to be foreseen, that it was not the proximate cause of the accident, and, lastly, that the plaintiff was guilty of contributory negligence. Whether the evidence in a particular case disclosed sufficient to justify a submission of the question of negligence to a jury, because of want of proper guard or railing upon a bridge or its approach, is not always easy to determine. No two cases are precisely alike, and hence it has been said that the action of negligence is sui generis, so that each must stand for and by itself, aided, however, by such precedents as may be applicable. That the failure to maintain a barrier in certain specific instances was not actionable neglect has been held in Lane v. Town of Hancock, 142 N. Y. 510, 37 N. E. 473; Smith v. Village of Henderson, 54 App. Div. 28, 66 N. Y. Supp. 347; Glasier v. Town of Hebron, 131 N. Y. 447, 30 N. E. 239; Sutphen v. Town of North Hempstead, 80 Hun, 410, 30 N. Y. Supp. 128; Young v. Town of Macomb, 11 App. Div. 481, 42 N. Y. Supp. 351. On the other hand, that evidence was sufficient, to go to the jury was held in Maxim v. Town of Champion, 50 Hun, 88, 4 N. Y. Supp. 515, affirmed 119 N. Y. 626, 23 N. E. 1144; Coney v. Town of Gilboa, 55 App. Div. 111, 67 N. Y. Supp. 116; Bryant v. Town of Randolph, 133 N. Y. 70, 30 N. E. 657; Wood v. Town of Gilboa, 76 Hun, 175, 27 N. Y. Supp. 586; Ivory v. Town of Deer Park, 116 N. Y. 476, 22 N. E. 1080; Pelkey v. Town of Saranac, 67 App. Div. 337, 73 N. Y. Supp. 493; Fox v. Union Turnpike Co., 59 App. Div. 363, 69 N. Y. Supp. 551; Burns v. City of Yonkers, 83 Hun, 211, 31 N. Y. Supp. 757; Holcomb v. Town of Champion, 12 N. Y. Supp. 882, affirmed 128 N. Y. 599, 28 N. E. 252; Roblee v. Town of Indian Lake, 11 App. Div. 439, 42 N. Y. Supp. 326; Kiernan v. Mayor, 14 App. Div. 156, 43 N. Y. Supp. 538. In the Holcomb Case a horse took fright, and, turning suddenly, upset the buggy, in which the plaintiff was driving, whereby she was thrown down an unguarded precipice at the side of the road. The roadway was not so wide nor so much traveled as in the case at bar. The sides sloped down to a retaining wall, instead of, as here, being vertical; but it seems to me the case more nearly resembles the one in hand than any other that has been called to my attention. It was affirmed by the Court of Appeals, and what seems to me a most important consideration had the commendation of the now Chief Judge of that court when he wrote the opinion in the Burns Case.

It is said that the accident in question was unusual, and one that could not reasonably have been apprehended. Such assertion as to the particular manner of this accident is undoubtedly correct. Just the

details could not have been predicted. That the pedestrian, with whom the plaintiff's wheel collided, would do just the thing that happened, could not have been anticipated by the highway commissioner; but that an accident might occur, it seems to me, was a fact that the jury could properly find. The trodden and much-frequented part of the roadway, by pedestrians and wheelmen, extended close to the plank, which rose 2 or 3 inches above the surface and constituted a part of the railing, to which reference has already been made. From the plank to the stone coping, and a distance of about 3 feet, was a continuous and slight descent, and from the edge of the coping was a vertical wall, from 12 to 15 feet down. There was little conducive to safety in the projecting edge of the plank. It may have been found to be a menace instead. An unexpected collision by pedestrian or wheelman, a push or stumble by a passerby, so that he would lose his balance, would place him in a situation of peril, and might precipitate him to the ground below. It was not, like the Town of Hancock Case, an unfrequented road, where a log near the bottom of a hill down which the road ran had gone to decay, but a much traveled highway; nor the Smith Case, where there was but a slight precipice, and between it and the roadway a sidewalk, upon which cyclers were forbidden to ride by an ordinance of the village; nor the Hubbel Case, where there was a roadbed 30 feet in width, then a stone curb 8 inches high, and a sidewalk 10 feet wide; nor the Sutphen Case, which was on a country road, with a slight ditch at the side to carry off surface water, and no very material difference in level. Many authorities where there was a liability show peculiar unexpected accidents. In the Fox Case, the horse shied for some undiscovered reason and plunged over the side of the approach. In the Kiernan Case, the plaintiff became dizzy and lost consciousness. In Roblee Case, a horse was frightened by a wave of the lake dashing against the roadway. In Lowery v. Manhattan R. R. Co., 99 N. Y. 158, 1 N. E. 608, 52 Am. Rep. 12, a cinder fell from a passing locomotive upon a horse attached to a wagon on the street below. The horse took fright, ran away, and struck and injured the plaintiff, who was traveling on the sidewalk.

Could the jury find the absence of the rail was the proximate cause? If the plaintiff had not collided with the footman, there would have been no accident. Neither would this particular accident have occurred if the plaintiff had been on foot, or in a carriage, or riding his wheel in the middle of the road; but neither hypothesis is controlling. Proximate cause is defined to be "that which in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred." Shearman & Redfield on Negligence, § 26. But the sequence is not broken by reason of contributory or concurring causes. Thus there was liability when a wagon, leaving a ferry, fell back and injured the plaintiff's wagon; the ferry hands having failed to block it. Townsend v. City of Boston, 187 Mass. 283, 72 N. E. 991. When a car collided with a wagon, and the plaintiff, a passenger in the car, was injured by being thrown against its side, the fact that the wagon's negligence contributed did not relieve the railroad. Frank v. Met. St. R. R., 91 App. Div. 485, 86 N. Y. Supp. 1018. When a horse

was frightened by the defendant's negligent emission of steam from its locomotive, the plaintiff got out and took the horse by the head, and was thrown down and injured. Held, that the escape of steam was the proximate cause. Hinchman v. Pere Marquette R. Co., 99 N. W. 277, 136 Mich. 341, 65 L. R. A. 553. When the plaintiff's team was frightened by defendant's negligence, and the plaintiff, in attempting to control his horse, broke a line, which was weak and insufficient for such an emergency, and which caused him to fall and break his leg, the original negligence was the proximate cause. Snyder v. Phila. Co., 54 W. Va. 149, 46 S. E. 366, 63 L. R. A. 896, 102 Am. St. Rep. 941. When a passenger was thrown from a street car by a sudden jerk, and when on the ground was run over by a cart drawn by an unmanageable mule, the jerk was held to be the cause. Grier v. St. Louis Merchant, etc., 84 S. W. 158, 108 Mo. App. 565. When a wheel track about two feet from the edge of an unguarded embankment had in it a mud hole, into which the rider ran and was thrown over the embankment, the court refused to hold the mud hole, and not the unguarded embankment, was the cause. Hendry v. Town of North Hampton, 56 Atl. 922, 72 N. H. 351, 64 L. R. A. 70, 101 Am. St. Rep. 681. A car was negligently permitted to collide with and puncture a tank containing naptha, from which several thousand gallons escaped, went into a catch-basin of a sewer, flowed through it and under a bridge, on which the plaintiff was standing, when he was injured by an explosion of the naptha, caused by coming in contact with a lighted switch lamp. Held question for the jury whether breaking the tank was the proximate cause. Gudfelder v. Pittsburg, etc., R. Co., 57 Atl. 70, 207 Pa. 629. There may be more than one proximate cause. Geary v. Met. St. R. Co., 84 App. Div. 514, 82 N. Y. Supp. 1016. Reference may also be made to Lowery v. Manhattan El. R., supra; Gueille v. Swan, 19 Johns. 381, 10 Am. Dec. 234; Gibney v. State, 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am. St. Rep. 690.

The concurring negligence of a third person is no defense, if the accident would not have occurred except for the negligence of the defendant. Cone v. D., L. & W. R. R. Co., 81 N. Y. 206, 37 Am. Rep. 491; Ellis v. N. Y., L. E. & W. R. R., 95 N. Y. 546; Coppins v. N. Y. C. & H. R. R. Co., 122 N. Y. 557, 25 N. E. 915, 19 Am. St. Rep. 523; Hawley v. Gloversville, 4 App. Div. 343, 38 N. Y. Supp. 647; Ivory v. Town of Deer Park, 116 N. Y. 476, 22 N. E. 1080; Wood v. Town of Gilboa, 76 Hun, 175, 27 N. Y. Supp. 1115; Rider v. Syracuse R. T. Co., 171 N. Y. 155, 63 N. E. 836, 58 L. R. A. 125.

Was there contributory negligence? The plaintiff, as a daily traveler, knew of the absence of the rail, the precipice, and the proximity of the roadway to the edge of the bridge, for the space of seven months prior to the accident. It was daylight, there was nothing to obstruct his view, nor was his attention distracted, so as to interfere with a proper appreciation of his surroundings, while passing over the bridge. The roadbed was hard and smooth, and not less than 25 feet wide, upon which he could have easily driven his wheel, extending the entire length of the bridge, including, of course, the open space in the railing. Indeed, he knew all that could be known of the situation. He was a good rider, young, and in full possession of his faculties

He did not turn out to avoid the men walking ahead, but signaled them to get out of his way. The case showing due care on his part, assuming the place dangerous, is not strong. Nevertheless, whether he was free from contributory negligence is, it seems to me, a question for the jury. Palmer v. Dearing, 93 N. Y. 7; Peil v. Reinhart, 127 N. Y. 381, 27 N. E. 1077, 12 L. R. A. 843; Dollard v. Roberts, 130 N. Y. 269, 29 N. E. 104, 14 L. R. A. 238; Morrissey v. Smith, 67 App. Div. 190, 73 N. Y. Supp. 673; Wesener v. Smith, 89 App. Div. 211, 85 N. Y. Supp. 837; Dale v. Syracuse, 71 Hun, 449, 24 N. Y. Supp. 968.

On the whole case, then, and freely conceding the very narrow, and possibly doubtful, ground on which the plaintiff stands, I conclude the motion for a nonsuit must be denied.