(156 App. Div. 836.)

ACKERT v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 29, 1913.)

1. MASTER AND SERVANT (§ 116*)—LIABILITY FOR INJURIES—STATUTORY PROVISIONS—"PERSON."

Labor Law (Consol. Laws 1909, c. 31) § 18, providing that a person employing or directing another to perform labor in the erection, repairing, altering, or painting of a house, building, or structure shall not furnish or erect, for the performance thereof, scaffolding which is unsafe, unsuitable, or improper, or not so constructed, placed, and operated as to give proper protection to the life and limb of a person so employed or engaged, and section 19, requiring all swinging and stationary scaffolding to be so constructed as to bear four times the maximum weight to be dependent therefrom or placed thereon, and providing that not more than four men shall be allowed on any swinging scaffolding at one time, apply to municipal corporations, especially when engaged in a private corporate enterprise for revenue, as distinguished from the performance of public governmental duties, in view of section 4, providing that any officer of a municipality "having a duty to perform in the premises,"

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

who violates any provisions of that law, shall be guilty of a malfeasance in office and liable to suspension or removal, and General Construction Law (Consol. Laws 1909, c. 22) § 37, defining "person" as including corporations and joint-stock companies.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*

For other definitions, see Words and Phrases, vol. 6, pp. 5322–5335; vol. 8, p. 7752.]

2. MASTER AND SERVANT (§ 128*)—LIABILITY FOR INJURIES—STATUTORY PROVISIONS.

Under Labor Law (Consol. Laws 1909, c. 31) § 18, providing that a person employing another to perform labor of any kind in the erection or painting of any structure shall not furnish or erect, for the performance of such labor, scaffolding which is unsafe, unsuitable, or improper, or not so constructed, placed, and operated as to give proper protection to the life and limb of persons so employed or engaged, an employer was not liable for the injuries of a painter, caused by his platform giving way, due to the act of another employé in improperly and unnecessarily throwing his weight and exerting his strength with great violence against a brace of a horse supporting the platform, where the platform was neither unsafe, unsuitable, nor improper for the purpose for which it was designed, nor shown to be so constructed and placed as not to give proper protection to the lives and limbs of those employed upon the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 256; Dec. Dig. § 128.*]

3. MASTER AND SERVANT (§ 278*)—ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE.

In a painter's action for injuries, evidence *held* insufficient to show that the scaffolding upon which he was working was not so constructed as to bear four times the maximum weight to be placed thereon when in use, as required by Labor Law (Consol. Laws 1909, c. 31) § 19.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

Appeal from Trial Term, New York County.

Action by William Ackert against the City of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Harry Crone, of New York City (Terence Farley, of New York City, on the brief), for appellant.

William L. Cahn, of New York City, for respondent.

LAUGHLIN, J. The plaintiff was in the employ of the defendant as a painter, and on the morning of the 21st of December, 1910, he was assisting in painting the ceiling of the cabin for women on the ferryboat Richmond, and the scaffold on which he was standing gave way, precipitating him to the floor of the cabin, inflicting injuries to recover for which he brought this action.

The scaffold was erected on appliances known as "horses," which had been constructed for the city about four weeks prior to the accident under the supervision of a foreman in charge of the carpenters in the Department of Docks and Ferries; and the only other place they

had been used was in doing work on the ferryboat Brooklyn. The horses were about seven feet high, and the longitudinal header forming the top was a piece of three by four inch spruce timber six feet long. The four legs were of yellow pine 4 inches wide by 1¼ inches in thickness and about 7½ feet in length, and they spread so that resting on the ground they were 7 feet apart, lengthwise of the horse, and 2½ feet across the ends. Under the header at either end there was a brace, consisting of a strip of white pine seven-eighths of an inch in thickness and of considerable width—the exact width was not shown— nailed across the legs. There was also another brace across either end, consisting of a strip of board 4 inches in width and 1¼ inches in thickness fastened to the exterior edges of the legs of the horse by five tenpenny nails at either end, and projecting beyond the legs to an extent sufficient to afford support to longitudinal braces, consisting of strips of board 4 inches in width and 1¼ inches in thickness, on either side of the horse nailed to the legs and resting on said cross braces. The scaffold was erected by the painters on the morning of the accident, but plaintiff did not take part in the erection thereof. It consisted of two rows of horses running lengthwise of the cabin, and painters' ladders or platforms placed on these horses running across the cabin, so that one ladder or platform rested upon each set of horses, five rows of planks, 2 by 9 inches and about 14 feet long extending lengthwise of the cabin from one ladder or platform to another on which they rested. In this manner a scaffold about 75 feet in length and from 12 to 14 feet in width, and consisting, in effect, of 5 sections, had been erected.

The plaintiff was standing on one of these planks in the middle section of the scaffold, or the third section from either end. There were between 40 and 60 painters working on the scaffold, or about 10 on each section, or 2 on each plank. Two painters working on the same section with the plaintiff or an adjoining section had an argument, and one of them jumped off the platform, and the other, on being dared to come down, followed, and they clinched on the floor below and were thus struggling for two or three minutes, when they were stopped by the acting foreman, who ordered them to leave the boat or return to their work. During this encounter 25 or 30 of the painters congregated over the painters' ladder or platform connecting the two sections under which the encounter was taking place. On being separated and ordered off the boat or to return to work, one of the men passed up the stairs and over the banister onto the scaffold; but the other, who weighed about 180 pounds and who appeared to be in a frenzy, rushed to the side of the cabin and stepped upon the seat, and then, turning around and placing one foot upon the longitudinal brace at the side of the horse over which the painters had congregated and putting his hands on top of the scaffold, leaped, sprang, or "bounded" toward the top, breaking one of the legs, to which the brace upon which he stepped was fastened, and the horse collapsed, letting down the two sections of which it formed part support. It appears that when the acting foreman ordered the men to stop fighting the painters who had congregated on the sections above started to separate, and

one of them at least reached another section before the accident. It is manifest, therefore, that at the time the leg of the horse broke the weight upon it was materially less than it had been while the men were clinched; and the evidence would not warrant an inference that the scaffold fell on account of the weight of the men upon it, or even that such weight contributed thereto; but it clearly points to the fact that the fall was due to this improper use of the brace by the plaintiff's coemployé. There is a conflict in the evidence as to whether or not ladders were supplied to enable the men to reach the scaffold; but, although there is evidence to the effect that the men at times climbed upon the scaffold using the braces as steps to the knowledge of defendant's foreman, it is uncontroverted that it was unnecessary for them to climb up the sides of the scaffold, for they could have obtained access thereto by the stairway.

The negligence for which it is sought to hold the city liable, however, is not in failing to provide ladders or to prohibit such use of the braces, but in violating the provisions of sections 18 and 19 of the Labor Law (Consol. Laws 1909, c. 31). The provisions of section 18, so far as material to a decision of the questions presented by the appeal, are as follows:

"Scaffolding for use of employés. A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

And those of section 19 are as follows:

"All swinging and stationary scaffolding shall be so constructed as to bear four times the maximum weight required to be dependent therefrom or placed thereon, when in use, and not more than four men shall be allowed on any swinging scaffolding at one time."

[1] It is contended at the outset by the learned counsel for the city that these provisions of the Labor Law do not apply to a municipal corporation. Although municipal corporations are not designated by name, they are included in the term "person" employed in the statute, which is defined by section 37 of the General Construction Law (Consol. Laws 1909, c. 22; Laws 1909, c. 27) as including corporations and joint-stock companies; and section 4 of the Labor Law shows that some of the provisions thereof, at least, were intended to apply to municipal corporations, for it is therein expressly declared, among other things, that any officer of a municipality "having a duty to perform in the premises" who violates any of the Labor Law shall be guilty of a malfeasance in office and liable to suspension or removal. There is no ground upon which it can fairly be inferred that the Legislature did not intend that these statutory provisions should apply to municipal corporations particularly where, as here, engaged in a private corporate enterprise for revenue as distinguished from the performance of public governmental duties. See Townsend v. City of Boston, 187 Mass. 283, 72 N. E. 991; Davies v. City of Boston, 190 Mass. 194, 76 N. E. 663; Oaks Mfg. Co. v. City of New York, 206

N. Y. 221, 99 N. E. 540; Dillon on Municipal Corp. (5th Ed.) § 1645; Labatt on Master & Servant, vol. 2, § 772.

[2, 3] We are of opinion, however, that the evidence does not show a violation of either section of the Labor Law. It is manifest that the scaffold was neither unsafe, nor unsuitable, nor improper for the purpose for which it was designed. It was not shown that it was not so constructed and placed as to give proper protection to the lives and limbs of those employed upon the work. The defendant could not foresee and was under no legal duty to guard against the violent use of the scaffold by an enraged workman which resulted in its collapse. Great stress is laid upon the provisions of section 18; it being claimed that the facts show that the scaffold was not so constructed as to bear four times the maximum weight required to be placed thereon when in use. There is, however, no evidence in support of this contention, other than that showing the manner in which and the material of which the scaffold was constructed and the fact that it collapsed under the circumstances described, which, we think, is wholly insufficient. There is no warrant in the evidence for the inference that this scaffold would not sustain four times the weight which it was required to bear in the performance of the work in question. There is no evidence of the use of improper material in its construction or of any defect arising from use or otherwise. The only reasonable inference to be drawn from the evidence concerning the cause of the accident is that it was caused by the plaintiff's fellow employé writhing under what he deemed to be a private grievance for which the city was in no manner responsible in throwing his weight and exerting his strength against the brace with great violence, which is a use for which the horse was not constructed and which the defendant had neither authorized nor permitted, and for the consequences of which is no more liable than if the scaffold was knocked or pulled down during the encounter between the men.

It follows, therefore, that the judgment and order should be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.