JANET SATLER, Respondent-Appellant, v JOHN LARSEN, Appellant, and MOUNT SINAI HOSPITAL, Respondent.

First Department, October 29, 1987

**APPEARANCES OF COUNSEL**

*Patricia A. Lynn* of counsel *(Robert T. Whittaker* with her on the brief; *Martin, Clearwater & Bell,* attorneys), for appellant.

*Wayne P. Jordan* of counsel *(Fischman & Chikofsky,* attorneys), for respondent-appellant.

**OPINION OF THE COURT**

MURPHY, P. J.

This action to recover damages for defamation brings up for review the statutory protections and immunities afforded persons, charged with the care of children, who report suspected cases of child abuse to the Bureau of Child Welfare. Because of the importance of these protections and immunities to the health and welfare of children, it is clear that only a persuasive showing of bad faith will permit such an action to proceed to trial.

Defendant Dr. John Larsen became the pediatrician of plaintiff Janet Satler's daughter, Kainin, in August 1981, when Kainin was approximately four months old. Thereafter, Kainin suffered what appeared to be seizures which precipitated two hospitalizations at New York Hospital. Kainin was discharged from the second of these hospitalizations on December 22, 1981. On December 23, 1981, however, Kainin was brought to Dr. Larsen's office by Lorie McHatten, a close friend of Ms. Satler who lived with her and often cared for the infant; Kainin was comatose and required immediate rehospitalization. She was, accordingly, admitted to Mount Sinai Hospital where she was diagnosed as suffering from a bilateral subdural hematoma, a condition frequently caused by trauma to the head.

That Kainin's suddenly and gravely deteriorated condition had been eventuated by physical abuse was a possibility raised early in her Mount Sinai hospitalization. The record indicates

that the possibility was investigated by Dr. Larsen and other members of the hospital treatment team and on January 6, 1982, a decision was taken by the Mount Sinai Parent Interaction Committee to refer Kainin's case to the Bureau of Child Welfare. Dr. Larsen informed Ms. Satler and Ms. McHatten of this decision on January 7, 1981 and the report was made on January 8, 1981. One week later the report was rescinded when the hospital treatment team reached the conclusion that the development of Kainin's subdural hematomas could be satisfactorily traced to socially benign medical causes, and that the initial suspicions of abuse could, therefore, be safely laid to rest.

The present action was commenced by summons and complaint dated December 29, 1983. In her first cause of action, plaintiff alleges that Dr. Larsen defamed her when, in the presence of "diverse persons", he said to her, "I must report you to the Bureau of Child Welfare for child abuse." In plaintiff's second cause, she alleges that she was additionally defamed by entries made by Dr. Larsen in his business records and those of Mount Sinai Hospital. In her third and last cause, plaintiff alleges against the hospital alone that it defamed her by permitting the dissemination of its business records, which records, it is claimed, contained statements charging her with child abuse.

In the order here appealed, Special Term dismissed plaintiff's third cause upon the ground that the entries made in the hospital record were part of Mount Sinai's good-faith participation in the making of a report to the Bureau of Child Welfare and, as such, came within the immunity of section 419 of the Social Services Law which provides in relevant part: "Any person, official, or institution participating in good faith in the providing of a service pursuant to section four hundred twenty-four of this title, the making of a report, the taking of photographs, or the removal or keeping of a child pursuant to this title shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions."

As to the alleged oral and written statements of Dr. Larsen, however, which formed the respective bases of plaintiff's first and second causes, Special Term opined that there were outstanding factual issues requiring resolution before it could be determined whether these statements came within the scope of the above-cited Social Services Law immunity. Ac-

cordingly, Dr. Larsen's motion to dismiss the causes asserted against him was denied.

The propriety of Special Term's dismissal of plaintiff's third cause is not here in dispute, plaintiff having withdrawn her appeal from that determination. The focus of our attention is, rather, directed to whether the defamation claims asserted against Dr. Larsen in plaintiff's first two causes are sustainable. We conclude that they are not.

■ Turning first to plaintiff's second cause of action based upon allegedly false and defamatory entries made by defendant Larsen in his own records and those of Mount Sinai Hospital, even if there were no statutory immunity applicable, it is clear that no sustainable claim for defamation is made out by the complaint and supporting documentation in the record. There is not one entry by Dr. Larsen in the subject records which even suggests that the plaintiff abused her child. Dr. Larsen's single reference to the BCW report concerning Kainin reads, "I spoke with Ms. Satler and Lorie in my office yesterday and informed them that we will report this problem to BCW." It is simply impossible to construe this statement as accusing plaintiff of child abuse; no mention is made of child abuse much less of plaintiff in the role of abuser. It is very basic that a cause of action for defamation is not sustainable if no defamatory statement has been made. As plaintiff has not, in response to defendant Larsen's summary judgment motion, come forward with any evidence of a statement by Dr. Larsen contained in his own records or those of Mount Sinai that is even arguably defamatory, defendant's motion for summary judgment dismissing the second cause of action ought to have been granted.

■ We turn now to plaintiff's first cause of action in which she alleges that Dr. Larsen defamed her by stating in the presence of Lorie McHatten, "I must report you to the Bureau of Child Welfare for child abuse." Assuming that this statement was in fact made, a matter disputed by defendant Larsen, we do not think that it was defamatory. Certainly, given the circumstances under which it was allegedly spoken, it could not have damaged the plaintiff's reputation in any way.

Viewed fairly, the complained of statement does not purport to accuse the plaintiff of child abuse; it indicates only that a report of child abuse was considered necessary. Had the statement been made in the presence of persons unaware of

the underlying circumstances, it would possibly convey the impression that the BCW report was necessary because plaintiff had in fact abused her daughter. Dr. Larsen, however, spoke to the plaintiff within the privacy of his office, and although the complaint and supporting papers make reference on information and belief to "diverse persons" being present, it appears that the only other person present was Ms. McHatten. As Ms. McHatten notes in her affidavit, she had for many years been a friend of plaintiff; since Kainin's birth she had resided with Ms. Satler and cared for Kainin while Ms. Satler was at work. Ms. McHatten by her own admission was intimately involved in all of the circumstances leading to Kainin's hospitalizations and was thus uniquely situated to know whether Kainin had been abused and, if so, by whom. Indeed, she states categorically, "There was nothing valid about Dr. Larsen's opinion regarding the possibility of Kainin Satler being abused by Janet Satler or myself."

Clearly, Ms. McHatten understood that the basis for the BCW report was not some undisclosed set of impliedly scandalous facts, but the opinion held by Dr. Larsen and other professionals at Mount Sinai that there was a possibility that plaintiff had abused her infant daughter. It is well established that expressions of opinion are constitutionally protected and hence, nonactionable. (Steinhilber v Alphonse, 68 NY2d 283, 286; Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 380, cert denied 434 US 969.)

It is, moreover, the case that Ms. McHatten knew that Dr. Larsen's opinion was incorrect. Ms. Satler's reputation could not have been damaged by the expression of an opinion, recognized as such by the only other person present beside Ms. Satler and Dr. Larsen, and known by that person, a close and longtime friend of the plaintiff, to be mistaken.

Quite apart from the fact that the statement upon which plaintiff's first cause of action rests does not under the circumstances of its utterance constitute actionable defamation, there are important policy considerations that weigh heavily against entertaining defamation claims such as those here asserted.

The importance of rapidly detecting and addressing instances of an evil as pernicious as child abuse cannot be overstated. Toward this end, the Legislature has required certain professionals, among them physicians such as Dr. Larsen, to register a report whenever "they have reasonable

cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child" (Social Services Law § 413). The obligation to report suspected child abuse has been deemed so important that willful failure to comply therewith has been made punishable as a class A misdemeanor (Social Services Law § 420 [1]) and constitutes a ground for the imposition of civil liability (Social Services Law § 420 [2]). Having imposed such a stern obligation, the Legislature has also recognized that those who perform it in good faith should not be placed at risk of civil or criminal liability for doing so. (Social Services Law § 419.)

Although the disclosure by Dr. Larsen to the plaintiff and Ms. McHatten of his intention to make a child abuse report to the Bureau of Child Welfare may not come directly within the immunity set forth in section 419 of the Social Services Law which, so far as is here relevant, only embraces participation in the making of a report, such disclosure must be viewed as a natural concomitant of the reporting obligation. If a professional has made or intends to make a report of suspected child abuse, he will frequently find it necessary and should feel free to discuss the report and the suspicions necessitating it with those directly concerned. This is particularly true where, as here, a physician has a continuing professional relationship with a child and those caring for the child and must address the issue of abuse in treatment. Clearly, when a clinician communicates bona fide suspicions of abuse to parents and other interested parties, and informs them of the necessity of making a report thereof, he should not do so at the risk of exposing himself to civil liability. If his remarks in this connection are not covered by the Social Services Law § 419 immunity, they are certainly qualifiedly privileged under the common-law rule shielding a speaker from liability for a good-faith communication made upon a subject in which the parties to the communication have a corresponding interest. *(See, Shapiro v Health Ins. Plan, 7 NY2d 56, 60.)* It would appear undeniable that Dr. Larsen, the plaintiff and Ms. McHatten were all directly interested in the subject matter of Dr. Larsen's communication bearing as it did upon Kainin's health and welfare. Plaintiff concedes as much, but maintains that the communication is nevertheless actionable because it was maliciously motivated and thus falls outside the qualified privilege. *(See, supra,* at 61.)* It was, however, plaintiff's burden to produce evidence sufficient to raise a triable issue of fact as to whether defendant acted out of actual malice if defendant's

summary judgment motion was to be denied. *(Supra; see also, Ashcroft v Hammond,* 197 NY 488, 495-496.) We are unable to find any such evidence in the record before us.

Plaintiff points to the BCW report itself as evidence of malice. She claims that defendant, in light of his knowledge of Kainin's medical history, knew that she had not been abused. She maintains further that an alleged delay in the making of the report, as well as the report's rescission one week after it had been made, demonstrate that defendant did not act in good faith. The report, she urges, was but part of defendant's scheme to cover up his malpractice in treating Kainin.

The record, however, shows that there was ample basis for the report. Plaintiff's daughter was brought to defendant's office comatose with a bilateral subdural hematoma but one day after she had been discharged from the hospital. The condition from which the child suffered, one which, as noted, is often caused by head trauma, along with the suddenness of its appearance, gave rise to the suspicion shared by Dr. Larsen and others on the Mount Sinai treatment team that Kainin might have been physically abused. To the extent that there was any delay in reporting the matter to BCW, there is no reason to attribute this to malice on Dr. Larsen's part. If any inference is to be drawn from the late report, it is that the defendant, precisely because he was aware of the infant's history of seizures, decided to proceed cautiously, perhaps over cautiously, before acting upon his suspicions. It should be stressed in this regard that the decision to make the report was not that of Dr. Larsen alone. The decision was made in conjunction with the entire treatment team and ratified by the hospital's Parent Interaction Committee. The plaintiff was notified of the decision promptly the day after it had been taken and the report to BCW was made but one day later.

Nor can we find any evidence of malice in the report's retraction. Once Dr. Larsen and his colleagues were satisfied that Kainin had not in fact been the victim of abuse, they acted responsibly by retracting the report. To have let the report stand, would have been a far more convincing indication of malice.

How a retracted report of child abuse, apparently never pursued by BCW, would have been useful to defendant in covering up medical malpractice is not explained by plaintiff. Indeed, there is no indication that defendant Larsen was aware of any malpractice allegations against him at the time

of the events in question. The only evidence of a malpractice action concerning Kainin Satler's care and treatment contained in the record is a summons and complaint dated May 16, 1983, and Dr. Larsen is not even named as a defendant in that action.

It is only by engaging in the most far-reaching speculation that it is possible to gather from the evidence adduced by plaintiff that defendant Larsen acted out of malice. That is plainly not enough to defeat defendant's motion for summary judgment. *(Shapiro v Health Ins. Plan, supra,* at 61.)

For the foregoing reasons, Special Term, in addition to dismissing plaintiff's third cause of action against Mount Sinai Hospital, should have dismissed plaintiff's first and second causes against Dr. Larsen.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered on July 10, 1985 which granted defendant Mount Sinai Hospital's motion for summary judgment and accordingly, dismissed plaintiff's third cause of action, but which denied defendant Larsen's motion for summary judgment dismissing plaintiff's first and second causes of action, should be modified, on the law, defendant Larsen's motion should be granted, and the complaint dismissed, and the order should otherwise be affirmed, without costs or disbursements.

KUPFERMAN, MILONAS, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on July 10, 1985, unanimously modified, on the law, defendant Larsen's motion granted, and the complaint dismissed, and the order is otherwise affirmed, without costs and without disbursements.