OPINION OF THE COURT
Michael D. Stallman, J.
These motions for summary judgment[1] by the City and a child care agency raise significant immunity questions.
Plaintiffs Carolina Lara and Marino Lara, her biological father, sue the City, and its contractor Graham-Windham, alleging negligent provision of foster care because Carolina was sexually abused in the home of her foster mother.
Facts
In November 1997, Carolina Lara, eight years old,[2] and her four siblings lived with their biological mother in upper Manhattan. Plaintiff Marino Lara did not then live with the children, and apparently had limited contact. After learning from the State-wide Child Abuse Hotline that Carolina had missed several days of school, Tracy Lissimore, a supervisor with the City’s Administration for Children’s Services (ACS), visited the biological mother’s home on another school day. Lissimore observed all five children in the apartment with their mother and two pit bulls. Subsequent conversations with *885 Carolina’s mother convinced Lissimore that the mother suffered from a mental illness. Thereafter, ACS obtained a Family Court order directing temporary removal of the children; ACS referred Carolina Lara and her siblings to Graham-Windham for placement. Graham-Windham placed the child and two siblings (Simon, 3V2, and Alondra, IV2) in the foster home of the alleged occurrence. It is undisputed that ACS had no involvement in selecting or screening the foster home, or in Carolina’s placement and stay there.
Plaintiffs allege, inter alia, that the nonparty foster mother’s two teenage sons raped and anally sodomized Carolina several times in November and December 1997 in the bedroom that she shared with the boys.[3] For reasons apparently unrelated to the alleged rape, the three Lara children were removed from the foster home. Family Court awarded Marino Lara custody on December 12, 1997. Marino Lara testified at his deposition that he learned what happened approximately two weeks after Carolina began living with him and then contacted the police. In August 1998, the youths pleaded guilty to sexual abuse in the second degree in Family Court, and received probation.
Carolina has not given any evidence of the alleged occurrences; she did not appear for a comptroller’s hearing (General Municipal Law § 50-h) or for an examination before trial,[4] asserting the risk of psychological damage.
Contentions
The complaint alleges three causes of action. The first cause of action alleges negligence in the administration of foster care, in that Carolina’s injuries “were caused solely by reason of the carelessness, negligence and wanton disregard on the part of the defendants.”[5] The second cause of action alleges negligence in hiring, monitoring and retaining unqualified employees. The third cause of action seeks reimbursement for money Marino Lara allegedly spent for the child’s medical care and damages for deprivation of her services, society and companionship. *886 Plaintiffs’ counsel has not opposed the City’s and GrahamWindham’s motions seeking dismissal of the third cause of action.
In its answer, the City asserts, as its third affirmative defense, that Marino[6] and Carolina Lara failed to submit to a comptroller’s examination and thereby violated General Municipal Law § 50-h. The City also alleges, inter alia, culpable conduct of other persons not named as defendants and failure to state a cause of action. The City also interposes cross claims for contribution and indemnification against codefendant Graham-Windham. Graham-Windham interposes essentially the same defenses and cross claims against the City.
I
Social Services Law § 419 provides:

“Immunity from Liability.

“Any person, official, or institution participating in good faith in the providing of a service pursuant to section four hundred twenty-four of this title, the making of a report, the taking of photographs, the removal or keeping of a child pursuant to this title, or the disclosure of child protective services information in compliance with sections twenty, four hundred twenty-two and four hundred twenty-two-a of this chapter shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions. For the purpose of any proceeding, civil or criminal, the good faith of any such person, official, or institution required to report cases of child abuse or maltreatment or providing a service pursuant to section four hundred twenty-four or the disclosure of child protective services information in compliance with sections twenty, four hundred twenty-two and four hundred twenty-two-a of this chapter shall be presumed, provided such person, official or institution was acting in discharge of their duties and within the scope of their employment, and that such liability did not result from the willful misconduct or gross negligence of such person, official or institution.” (Emphasis supplied.)
At issue is the scope of immunity provided by Social Services Law § 419 and whether plaintiffs’ claims are thereby statutorily *887 barred. Plaintiffs contend that the City and Graham-Windham were negligent, inter alia, by placing the child in a foster home without performing a sufficient background investigation of the foster mother’s children and by inadequate follow-through. In these summary judgment motions, defendants contend that the Legislature, by enacting Social Services Law § 419, sought to protect against precisely this type of litigation in order to advance the public policy of encouraging swift and impartial investigation of child abuse and prompt placement of children. In opposition, plaintiffs contend that questions of fact exist as to whether defendants are entitled to immunity under Social Services Law § 419.
Both sentences of Social Services Law § 419 must be read in pari materia with Social Services Law § 420 and in context as component parts of Social Services Law, article 6, title 6 (Child Protective Services). Title 6 is a comprehensive framework providing for the reporting and investigation of child abuse and placement, care and treatment of children. Section 419 is a general immunity provision. Section 420 is the only section specifying conduct to which immunity does not attach. Social Services Law § 420 imposes civil and criminal liability for knowing and willful failures to report child abuse or maltreatment.[7] Social Services Law § 420 uses the same “[a]ny person, official or institution” language as Social Services Law § 419. This parallelism confirms that Social Services Law § 420 is a specific statutory exception to Social Services Law § 419, and demonstrates the breadth of immunity granted by Social Services Law § 419. Social Services Law § 420 evinces a legislative recognition that, absent a distinct, specific, limited enactment, no private right of action for money damages exists from the good faith job performance of anyone involved in statutory child care activities.[8] The good faith requirement means that Social Services Law § 419 immunity is qualified, not absolute; the presumption effectively frees the subject person, official or institution from having to prove good faith.
II
It is clear that the City and Graham-Windham are covered by Social Services Law § 419.
*888 The City of New York is a “person” within the meaning and intent of Social Services Law § 419. The City is a municipal corporation. (Ackert v City of New York, 156 App Div 836.) A corporation, however organized, is legally deemed a person. (See Village of Bronxville v Francis, 206 Misc 339, affd 1 NY2d 839; General Construction Law § 37; see also Rivera v Laporte, 120 Misc 2d 733 [M. Evans, J.] [City of New York is a “person” entitled to due process under US Const 14th Amend and NY Const, art I, § 6].) Graham-Windham is apparently not a corporation. While the Court cannot determine here GrahamWindham’s legal form of organization, it is clear that GrahamWindham is an “institution” within the meaning of Social Services Law § 419.
The City and Graham-Windham participated in the “removal or keeping” of children under Social Services Law, article 6, title 6. ACS is a child protective service within the meaning of Social Services Law §§ 423 and 424. The City is responsible for ACS, a City department which cannot itself sue or be sued.
ra
Understanding legislative intent can help determine the meaning of ambiguous statutory language. (See Di Marco v Hudson Val. Blood Servs., 147 AD2d 156, citing McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [b].) Where a statute’s meaning is apparent from a contextual reading, legislative history can be important to an understanding of the statute’s structure and purpose. The legislative intent here is clear and consonant with the expressed statutory language. (See Social Services Law § 411 [findings and purpose]; L 1973, ch 1039, §D
The two sentences of Social Services Law § 419 lack strict parallelism, resulting from piecemeal amendment over the years. (L 1983, ch 176, § 1; L 1984, ch 120, § 1; L 1996, ch 12, § 7.) As currently drafted, each sentence recites an overlapping, but not identical, set of activities. Because both sentences include most of the acts or functions recited by the other, it is clear that the two sentences were not intended to enact two different, mutually exclusive standards.[9] Rather, the second sentence was intended to amplify the good faith standard required by the first sentence. (See letter, Donald Urell, Gen *889 eral Counsel, New York State Division for Youth, to Gerald Crotty, Counsel to Governor, May 4, 1984, Bill Jacket, L 1984, ch 120.) The Appellate Division, Third Department, has assumed sub silentio that both sentences must be read together as a single standard. (Van Emrik v Chemung County Dept. of Social Servs., 220 AD2d 952, 953, lv dismissed 88 NY2d 874 [applying the second sentence’s presumption language to the “removal” language contained only in the first sentence].) Thus, in cases of gross negligence or willful misconduct, the good faith presumption is inapplicable.
As originally enacted in 1973, Social Services Law § 419 provided immunity from civil or criminal liability to any person, official or institution involved in the specific activities of making a child abuse report, the taking of photographs or the removal or keeping of a child pursuant to law. (L 1973, ch 1039, § 1.) A 1983 amendment extended such immunity to any person, official or institution involved in any activity fulfilling its child protective services duties as set forth in Social Services Law § 424.[10] (L 1983, ch 176, § 1.) This amendment and subsequent minor clarifying amendments, although cumulatively cumbersome, were intended to extend immunity to all acts undertaken by a person, official or institution that provides child protective services pursuant to Social Services Law § 424. (Mem of Attorney General Robert Abrams, May 26, 1983, Bill Jacket, L 1983, ch 176 [“(I)t will now be clear that the provisions of Section 419 extend to all activities involved in the child protection process, thus eliminating any uncertainty that exists in the statute”]; see generally Bill Jackets to L 1983, ch 176 and L 1984, ch 120.)
The underlying purpose for immunizing persons and entities providing child protective services is to permit them wide discretion in performing their jobs so as to encourage the protection of children. Only by removing the threat of civil suit or criminal prosecution can child protection workers and their employers be assured that their good faith actions will not be later second-guessed by third parties. (See Satler v Larsen, 131 AD2d 125.)
Plaintiffs argue, without citation to any authority, that Social Services Law § 419 statutory immunity is limited to the reporting and actual removal of a child from her parent’s *890 custody, but does not extend to the keeping or retention of a child in foster care. This argument ignores both the plain language of Social Services Law § 419, which immunizes any person, official or institution participating in good faith in “the removal or keeping of a child” (emphasis added), and the manifest legislative intent.
Nevertheless, plaintiffs insist that statutory immunity does not extend to common-law negligence arising from a child’s placement in a foster home. Significantly, no such limitation is contained in the law. Should the Legislature determine that a more restrictive view of immunity would be desirable public policy, it may amend the law appropriately. This Court may not second-guess the plain text of the statute and the clear intent of the Legislature.
IV
The City’s motion for summary judgment must be granted. The City has shown entitlement to judgment as a matter of law. Plaintiffs have not demonstrated that they have any cognizable claim against the City of New York under common law or statute. Moreover, the City is entitled to statutory and common-law immunity.
The complaint alleges acts or omissions by the City that involve the exercise of discretion. For example, the City’s selection of Graham-Windham as a contractual child care provider, its investigation of the five Lara children, its choice of GrahamWindham as the agency for arranging Carolina’s foster care, and its relationship , with and oversight of Graham-Windham during the foster care period, all required the exercise of judgment; some acts clearly implicated issues of public policy and the allocation of personnel and other public resources. Not only is the manifest legislative intent of Social Services Law § 419 to immunize such official conduct, common-law immunity traditionally attaches to discretionary acts taken in the discharge of government function. “[W]hen official action involves the exercise of discretion, the officer is not liable for the injurious consequences of that action even if resulting from negligence or malice.” (Tango v Tulevech, 61 NY2d 34, 40.) The City is therefore absolutely immune respecting such discretionary activity.
It is undisputed that the City has statutory duties relating to the investigation, placement and foster care of children taken into custody. (See Social Services Law, art 6, tit 6, passim.) There is no evidence in the Social Services Law or *891 otherwise that any applicable law or contract was intended to create a private right of action for money damages; rather, a logical reading of the statute as a whole indicates otherwise. (See Mark G. v Sabol, 93 NY2d 710, 722.) Similarly, Social Services Law, article 6, title 6 envisions the use of private agencies to provide foster care placements under contract. (See also Social Services Law § 371 [10].) Not only is such contracting permissible, such outsourcing in general, the specific contract with Graham-Windham and the decision to assign Carolina to Graham-Windham are not subject to challenge here. The outsourcing at issue here is not an improper delegation of a governmental function. Neither does it create municipal liability for activity that would be otherwise unactionable.
It is clear that Graham-Windham was an independent contractor, not an agent of the City. Neither under the Social Services Law nor general principles of vicarious liability would the City be responsible for the acts or omissions of GrahamWindham. (See Chainani v Board of Educ., 87 NY2d 370.) Although plaintiffs’ counsel repeatedly calls the City’s duties “non-delegable,” plaintiffs have not demonstrated a basis for vicarious liability. In particular, plaintiffs have not shown that any of the alleged acts or omissions violated any specific duty enjoined on the City by law (see Chainani, supra). To hold otherwise would make the City an insurer, absolutely liable for the acts or omissions by the foster care agency or the foster family, over which the City had no control.
The City is also entitled to Social Services Law § 419 immunity. There is no evidence that the City engaged in willful misconduct or gross negligence, or of a knowing and willful failure to report child abuse. In order to overcome Social Services Law § 419 qualified immunity, plaintiff must overcome the statutory presumption of good faith and must demonstrate “persuasive [evidence] of bad faith.” (Van Emrik v Chemung County Dept. of Social Servs., supra, 220 AD2d at 953; Satler v Larsen, supra, 131 AD2d at 126.) There is no evidence here of any lack of good faith, let alone the quantum of evidence of bad faith required to overcome the statutory good faith presumption at the heart of qualified immunity. Negligence,[11] even if established, is not synonymous with bad faith. Given the absence of such evidence, no triable factual question is presented.
*892 The City is also entitled to summary judgment because Carolina Lara was not produced for a comptroller’s examination pursuant to General Municipal Law § 50-h.[12] Compliance with a demand for a comptroller’s examination is a condition precedent to commencement of an action against the City of New York. (General Municipal Law § 50-h [5]; Matter of Pelekanos v City of New York, 264 AD2d 446.) Noncompliance is a ground for dismissal. (Hill v New York City Tr. Auth., 206 AD2d 969.)
It is undisputed that Carolina has never testified at such an examination although the City duly requested one. At Marino Lara’s examination, plaintiffs’ counsel indicated that Carolina would not be produced due to concerns about how an examination would affect her mental health. It appears that the City’s counsel adjourned Carolina’s examination, specifically not waiving it, but that plaintiffs continued to refuse to cooperate with their statutory obligation and instead commenced this action. There is no evidence that the City waived its right to the examination either before or after commencement of the action. (See Secor v Town of Orangetown, 250 AD2d 588.)
Carolina Lara is a named plaintiff. She is clearly the only person able to explain the occurrences with specificity. Given the sparse, vague and conflicting evidence about the incidents thus far disclosed, it is utterly impossible to know what actually happened; the lack of Carolina’s examination made it difficult to conduct an investigation and frame a defense. Carolina’s age does not exempt her from the requirement to submit to a comptroller’s examination. (See Matter of Simmons v Board of Educ., 169 AD2d 727 [City’s motion to dismiss complaint properly granted when infant plaintiff failed to appear for comptroller’s examination].) Neither does the unilateral and subjective assessment of plaintiffs and their attorneys that simple, factual testimony at a comptroller’s examination would adversely affect her emotional health. A plaintiff may not affirmatively assert a claim for emotional injuries and then use that assertion as exemption from a mandatory statutory condition precedent.[13]
*893 V
Graham-Windham has not demonstrated entitlement to statutory immunity under Social Services Law § 419. Based on the evidence presented, it cannot be said as a matter of law that certain of Graham-Windham’s actions did not amount to gross negligence or lack of good faith. Particularly significant is what Graham-Windham knew or should have known about Carolina’s sleeping arrangements and living conditions in the foster family’s apartment prior to the incidents,[14] including the number of children that the foster mother was certified to host. It is undisputed that Graham-Windham knew prior to the subject placement that the foster mother’s apartment had two bedrooms: one occupied by the foster mother and the other occupied by the two teenage sons. Plaintiffs allege that a man was sleeping with the foster mother in her bedroom. It is undisputed that eight-year-old Carolina was assigned to share a bedroom with two teenage males in apparent violation of Department of Social Services Regulations Manual § 444.5 (b) (4).
For the foregoing reasons, and because discovery remains outstanding from Graham-Windham, summary judgment is hereby denied.
Accordingly, it is ordered that the third cause of action of the complaint is dismissed against both defendants without opposition, and it is ordered that the City of New York’s motion for summary judgment dismissing the complaint and cross claims against it is hereby granted.

. The City of New York originally moved for dismissal of the complaint and all cross claims pursuant to CPLR 3211 (a) (7). Graham-Windham cross-moved for the same relief. The Court converted these motions to motions for summary judgment pursuant to CPLR 3211 (c) and gave all parties time to submit additional papers.

. Although Carolina Lara’s date of birth is given as February 25, 1987 in plaintiffs’ verified bill of particulars to the City (fl 12) and plaintiffs’ verified bill of particulars to Graham-Windham (jf 11), that date is apparently incorrect. Based on the Court’s review of the Family Court records and medical records submitted in connection with this motion, Carolina Lara’s date of birth appears to be February 25, 1989.

. The complaint alleges November 1997 through January 1998; the bill of particulars alleges November and December 1997.

. By order dated January 4, 2000, the previously assigned justice ordered that Carolina be produced for deposition 60 days before trial. By stipulation dated October 3, 2000, the parties agreed that the issue of the child’s deposition would be addressed at a further compliance conference after determination of the projected motions for summary judgment.

. Plaintiffs do not challenge the removal of the child from the biological mother’s home, the initiation of the Family Court proceeding for her temporary removal, or her placement in foster care.

. Marino Lara thereafter eventually appeared at both a late comptroller’s examination and an examination before trial.

. Because there is no allegation or proof of knowing and willful failure to report on the part of either the City or Graham-Windham, Social Services Law § 420 statutory liability is not at issue here.

. Statutory immunity does not prevent administrative and professional discipline.

. The last clause of the first sentence, “that might otherwise result by reason of such actions,” redundantly restates the obvious: a plaintiff must demonstrate what would constitute a valid claim irrespective of statutory immunity. (See Satler v Larsen, 131 AD2d 125.)

. Each child protective service shall “13. coordinate, provide or arrange for and monitor, as authorized by the social services law, the family court act and by this title, rehabilitative services for children and their families on a voluntary basis or under a final or intermediate order of the family court.”

. Moreover, plaintiffs have neither pleaded the City’s breach of a special duty, nor demonstrated the requisite elements. (Lauer v City of New York, 95 NY2d 95; see also Kiernan v City of New York, NYLJ, Jan. 19, 2001, at 27, col 2.)

. While General Municipal Law § 50-h refers to the “claimant,” it clearly means the allegedly injured person, not just that person’s legal representative or guardian.

. The prior justice’s preliminary conference order that stayed Carolina’s deposition until 60 days before trial did not exempt plaintiff from the requirements of General Municipal Law §§ 50-e and 50-h.

. By decision dated October 4, 2000, after an in camera investigation of voluminous documents submitted by defendants, this Court directed that the documents be turned over to plaintiffs with some minor redactions. Although counsel have not included most of those documents on this motion, a close examination of those documents would likely further illuminate these issues. The Court has not considered those unsubmitted documents on this motion.