Oscar PRESTON, Jr., Plaintiff,

v.

State of NEW YORK, City of New York, Bronx Lebanon Hospital, Dr. Caroline Garcia, Dr. R.S. Baily, Dr. Olga Jimmenez, Administration of Children Services, Lisette Matos, Anthony White, New York City Police Depart-

ment, Det. Michael Marchman, P.O. Nancy Quintana, Bronx Assistant District Attorney, Mimi Mares, Laurel Sobel, Calvin K. Woo, and Bronx Criminal Court Official: Crystal Bailey, Defendants.

No. 00 CIV. 6130(VM).

United States District Court, S.D. New York.

June 27, 2002.

**DECISION AND ORDER**

MARRERO, District Judge.

*Pro se* plaintiff Oscar Preston Jr. ("Preston") commenced this action asserting claims under 42 U.S.C. § 1983 against all defendants, as well as assorted state law claims against certain defendants. Defendants City of New York, on behalf of the Administration of Children's Services ("ACS"), including its employees Lisette Matos ("Matos") and Anthony White ("White"), the New York City Police Department ("NYPD"), including employees Det. Michael Marchman ("Marchman") and Police Officer Nancy Quintana ("Quintana"), as well as Mimi Mares ("Mares"), Laurie Sobel ("Sobel") and Calvin Woo ("Woo") of the Bronx District Attorney's Office (collectively, the "City Defendants") answered the complaint. Defendants Dr. R.S. Bailey ("Dr.Bailey") and Dr. Olga Jimmenez ("Jimmenez") have not been served. Although served, Dr. Caroline Garcia ("Garcia") and the State of New York did not answer. Defendants Crystal Bailey ("Bailey") and Bronx Lebanon Hospital Center ("Bronx Lebanon") filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b). Preston opposed the motions. For the reasons set forth below, the Court grants Bailey's and Bronx Lebanon's motions to dismiss. The Court also takes this opportunity to review the pleadings under 28 U.S.C. § 1915 and determine each defendant's status in this litigation.

## I. BACKGROUND

According to the Second Amended Complaint, filed on April 26, 2001 (the "Second Am.Compl."),[1] Preston claims that defendants violated his constitutional rights and committed torts under state law by insti-

Oscar Preston, Sing Sing Correctional Facility, Ossining, NY, plaintiff, pro se.

Seth Mitchell Rosen, Corporation Counsel of the City of New York, Brooklyn, NY, for defendants.

---

**1.** To the Second Amended Complaint Preston appended the Complaint (the "Compl.") and the amended Complaint (the "Am.Compl."), which are related complaints he previously filed with this Court, as well as the Insert to the Amended Complaint ("Insert"). The Court reads the Second Amended Complaint as a whole, but cites to its particular components for clarity's sake.

gating and continuing false and retaliatory prosecutions against him.[2] The first prosecution was begun on January 5, 1998, when a minor (the "Minor") and her mother, along with Matos and White, filed a criminal complaint against Preston alleging that he raped the Minor on December 21, 1997. Quintana contacted Preston's parole officer on January 5, 1998 to request that Preston voluntarily submit to questioning. When Preston voluntarily surrendered, he was put under arrest and informed that he was being charged with rape, sodomy, sexual abuse and acting in a manner injurious to a child. He was denied bail and remained in custody through his trial.

After Preston's arrest, the Minor was taken to Bronx Lebanon for a medical examination that was performed by Garcia.[3] According to Preston, Garcia's examination revealed "no cause" for any investigation of Preston. He claims that Garcia had a duty to communicate such information to the police.

The first indictment on the original charges against Preston was dismissed. Preston was re-indicted on lesser charges. The case went to trial and on July 1, 1999, a jury acquitted him of the lesser charges (the "Acquittal"). Preston was released from custody after having spent 543 days in jail.

Preston asserts that the Minor's statements were patently false, that the City Defendants knew her allegations were based in fantasy, and that the medical examinations demonstrated that there was no crime. Preston argues that the City Defendant's persistence in prosecuting such a meritless case is due to their malicious intent and deliberate indifference for his rights.

Four days after the Acquittal, on July 5, 1999, Preston was again arrested, this time for aggravated harassment (the "Harassment Charges") based on a telephone call he admitted to making to the Minor's mother. At trial, the judge dismissed the Charges, and *sua sponte* found him guilty of violating New York Penal Law 240.25 (the "Misdemeanor"). He was sentenced to time served. Preston asserts that this prosecution was instituted in retaliation for his having obtained the Acquittal.

Preston was later charged with violating his parole on July 6, July 16 and November 12, 1999. in preparation for the Parole Revocation Hearing, held by the New York State Division of Parole on November 26, 1999 (the "Hearing"), Woo submitted a Certificate of Disposition ("Certificate") that had been certified by Bailey, who then served as a Principal Office Assistant in the Bronx County Criminal Court.[4] The Certificate was inaccurate in that it stated Preston had been convicted of the Harassment Charges as well as the Misdemeanor. Preston raised this point during the Hearing. (*See* Transcript In the Matter of the Parole Revocation Hearing of Oscar Preston, dated November 26, 1999, attached to the Affirmation [of David Nowve] in Support of Motion to Dismiss Complaint Pursuant to Fed.R.Civ.P. 12(b)(6), dated July 31, 2001 ("Nowve

---

**2.** Except as otherwise noted, the Court's summary of the facts underlying this case is derived from the allegations of the Second Amended Complaint, read as a whole, as well as those facts introduced or relied upon by Preston in his motion papers. (*See infra,* discussion at Part II.A.2.)

**3.** Two other Bronx Lebanon doctors, Dr. Bailey and Jimmenez, were listed as witnesses by the Bronx District Attorney's office. The pleadings do not contain any further allegation against them.

**4.** Preston made reference to numerous documents and relied on official court records in his complaint, opposition and reply papers. Accordingly, the Court may consider those official records and documents in its decision. (*See infra,* discussion at Part II.A.2.)

Aff.") as Ex. E, ("Tr."), at 33–36, 41–43.) Preston's parole was revoked. The written decision acknowledged that, as Preston had objected, the Certificate was incorrect, and determined that the revocation of parole was based on unrelated "charges of criminal contempt and disrupting the criminal court proceedings." (Parole Revocation Decision Notice, attached as Ex. D to the Nowve Aff. (the "Parole Decision"), at 2–3.) Preston contested those charges during the proceeding. (*See* Tr., at 16, 26–31, 36, 38.)

Although he raised the issue in his pleadings, (*see* Compl., at ¶ 20), Preston does not contend that the inaccurate Certificate caused the judge to revoke his parole. (*See* Affirmation in Opposition to Defendant's Motion to Dismiss Defendant Crystal Bailey ("Opposition Aff."), at ¶ 13.) Rather, Preston argues that by providing false information in the Certificate, Bailey deprived him of due process during the Hearing. (*See id.*)

Preston asserts that as a result of these deprivations of constitutional rights, he has been subjected to various forms of mental distress, loss of potential income and liberty. Furthermore, although he believes the events ended on November 15, 2000,[5] he continues to suffer injuries to his reputation, a decline in his physical health, and loss of property.

Preston initially filed two actions which were consolidated and dismissed with leave to replead by Chief Judge Michael B. Mukasey on August 21, 2000 (the "Dismissal Decision"). Preston then filed the Amended Complaint, which forms the basis of this action, on October 13, 2000. The case was reassigned to this Court. The action was again dismissed for Preston's failure to comply with Federal Rule of Civil Procedure 4(m), which requires

that a plaintiff serve the complaint on defendants within 120 days of filing.

By Order dated April 3, 2001, the Court granted Preston's request to reinstate the matter and granted Preston an extension of time to serve the defendants and identify the John Doe defendants. Preston filed the Second Amended Complaint on May 4, 2001 and initiated service through the United States Marshal (the "Marshal"). *See* 28 U.S.C. § 566; *Romandette v. Weetabix Co.*, 807 F.2d 309 (2d Cir.1986) (a plaintiff who has provided the Marshal with sufficient service information is entitled to rely on the Marshal to serve the complaint in a timely manner). On behalf of *pro se* plaintiffs, the Marshal typically will serve defendants by mail, or, if service cannot be effected by mail, by personal service. *See* District Executive's Office, United States District Court for the Southern District of New York, A Manual for Pro Se Litigants Appearing Before the United States District Court for the Southern District of New York (1993), at 47. Preston requested another extension of time to serve the Second Amended Complaint on defendants.

Proofs of service were filed for defendants Bailey, Bronx Lebanon, Garcia, and the City Defendants, including ACS, Matos, White, NYPD, Marchman and Quintana. No proofs of service were filed for Dr. Bailey or Jimmenez. Defendants Garcia and the State of New York never filed an answer or other response. The City Defendants filed an answer. Bailey and Bronx Lebanon filed motions to dismiss.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

Defendants seek dismissal of the Complaint on several grounds pursuant to Fed-

---

**5.** Preston's pleading does not explain why the events giving rise to his action end on Novem-

ber 15, 2000.

eral Rule of Civil Procedure 12(b). The Court considers the jurisdictional issues first, because a dismissal for lack of jurisdiction renders all other claims moot. *Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."); *Calero v. Immigration and Naturalization Service*, 957 F.2d 50 (2d Cir.1992); *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358 (2d Cir. 2000).

1. *Federal Rule of Civil Procedure 12(b)(1)*

■■■ Because federal courts are courts of limited jurisdiction, courts must police subject matter delineations on their own initiative. *See* Fed.R.Civ.P. 12(h); *Ruhrgas*, 526 U.S. at 583, 119 S.Ct. 1563; *Lyndonville Savings Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir.2000) ("[F]ailure of subject matter jurisdiction is not writable and may be raised at any time by a party or the court *sua sponte.*"). When motion to dismiss pursuant to Rule 12(b)(1) is brought, it is the Court's duty to resolve disputed jurisdictional facts. *See Cargill International S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993); *see also Ruhrgas*, 526 U.S. at 583, 119 S.Ct. 1563. The Court may fulfill its duty by reference to evidence outside the pleadings. *See Zappia Middle East Construction Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000). Furthermore, in resolving a challenge to subject matter jurisdiction, the Court does not draw inferences in favor of the plaintiff. *See Newsom–Lang v. Warren International*, 129 F.Supp.2d 662, 663–64 (S.D.N.Y.2001).

2. *Federal Rule of Civil Procedure 12(b)(6)*

A district court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) only if it appears beyond doubt that the non-moving party could prove no set of facts that would entitle it to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994). In reviewing the pleadings, a court must accept the non-moving party's well-pleaded allegations as true. *See Hishon*, 467 U.S. at 73, 104 S.Ct. 2229.

■■■ A court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading. *See I. Meyer Pincus & Associates v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir.1991). In addition, a Court may consider "matters of which judicial notice may be taken." *Brass v. American Film Technologies*, 987 F.2d 142, 150 (2d Cir.1993); *see also Tsai v. Rockefeller University*, 137 F.Supp.2d 276, n. 2 (S.D.N.Y.2001) (a court "may take judicial notice of reports of administrative bodies without converting a motion to dismiss into one for summary judgment."); Fed.R.Evid. 201(b).

■■■ Where a party appears *pro se*, the Courts are required to broadly construe that party's pleadings and interpret them "to raise the strongest argument they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). Furthermore, in this situation, "the factual allegations raised in the [*pro se* ] plaintiff's Opposition to Defendant's Motion to Dismiss ... will be treated as part of [his] complaint." *Tsai*, 137 F.Supp.2d at 280 (citations omitted.)

Here, Preston's complaint references documents submitted at the Hearing. In addition, Preston attached a copy of his criminal history records, and annotated copies of the Certificate and Dismissal Decision. The transcript of the Hearing, also, is integral to the allegations of Pres-

ton's complaint and was quoted by Preston in his opposition briefs. In addition, the Court may take judicial notice of the official records of that administrative proceeding. Accordingly, the Court's consideration of the Dismissal Decision, the Parole Decision, the Violation of Release Report, dated November 8, 1999 and the Transcript and the Parole Appeal Decision Notice, dated July 7, 2000, which are attached as Exhibits A, D, E, F, and G to the Nowve Affidavit, does not convert the motions to dismiss into those for summary judgment.

3. *28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A*

■ A district court must dismiss a complaint filed *in forma pauperis* "at any time if the court determines that ... (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Moreover, a district court is to review, as soon as practicable, "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). If that review reveals that the complaint is "(1) frivolous, malicious or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief" it must dismiss the complaint, or those portions of the complaint. 28 U.S.C. § 1915A(b). The Court's § 1915A review may be conducted *sua sponte* without notice to the prisoner. *See Neal v. Goord,* 267 F.3d 116, 119 (2d Cir.2001).

On August 17, 2000, Preston obtained leave to proceed *in forma pauperis.* Accordingly, § 1915 applies to his case. Furthermore, Preston is currently incarcerated at Wende Correctional Facility, serving a sentence on an unrelated charge. It is not clear on what conviction he is incarcerated. Accordingly, § 1915A also applies. Thus, the Court now reviews Preston's Complaint to determine whether the Court lacks subject matter jurisdiction or whether the pleadings are frivolous, malicious or fail to state a claim.

■ An action is frivolous "where it lacks an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) [6]; *see also Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998). A complaint may be dismissed as malicious where it "was not to rectify any cognizable harm, but only to harass and disparage" the defendant. *Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (dismissing complaint against federal prosecutor who obtained conviction against the plaintiff as frivolous and malicious). And finally, a court evaluates whether a complaint "fails to state a claim upon which relief may be granted" under 28 U.S.C. § 1915A under the same standard as a motion to dismiss brought under Rule 12(b)(6). *See Duamutef v. Morris,* 956 F.Supp. 1112, 1115 (S.D.N.Y.1997).

4. *Leave to Amend*

■ Typically, a dismissal pursuant to Rule 12 is made with leave to replead the deficient complaint. *See* Fed.R.Civ.P. 15(a); *see also Ronzani v. Sanofi, S.A.,* 899 F.2d 195, 198 (2d Cir.1990). However,

---

**6.** The Supreme Court in *Neitzke* applied 28 U.S.C. § 1915(d) prior to enactment of the Prisoner Litigation Reform Act of 1995 (the "PLRA"). The PLRA merely re-designated § 1915(d) to § 1915(e)(2)(B), such that case law addressing the meaning of frivolousness under the prior law remains applicable. *See* § 804 of the PLRA, Pub.L. No. 104–134, 110 Stat. 1321 (April 26, 1996).

"where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993). The Court, therefore, has discretion to deny Preston leave to file a third amended pleading.

## B. CLAIMS AGAINST BAILEY

Bailey argues that Preston's claims against her should be dismissed at this stage pursuant to the doctrine of qualified immunity.[7] Preston opposes Bailey's motion on the grounds that her actions render her ineligible for immunity from suit because of her "deliberate indifference".

 Qualified immunity shields state officials from liability under § 1983; however, because their immunity is only qualified, their conduct is not always shielded. A factual inquiry may be necessary to determine if immunity is available. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Krause v. Bennett*, 887 F.2d 362, 368 (2d Cir.1989). A court first asks, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If not, the inquiry is over and qualified immunity applies. If so, a court must consider "whether the right was clearly established," such that "it would be clear to a reasonable officer that the con-

duct was unlawful in the situation he confronted." *Id.* Thus, a defendant will have established a right to qualified immunity by showing that:

> it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution; [or that] it was not clear at the time of the acts at issue that an exception did not permit those acts; [or that] it was objectively reasonable for [the defendant] to believe that his acts did not violate [plaintiff's rights].

*Krause*, 887 F.2d at 368. Qualified immunity bars suits filed against government officials in both their individual and official capacities. *See Frank v. Relin*, 1 F.3d 1317, 1327–28 (2d Cir.1993).

 Preston's claim against Bailey is that her action:

> was the cause of him (the Plaintiff) not receiving a fair and Constitutionally Guaranteed right to confront Adverse witnesses, for the Certificate of Disposition stated I was convicted of a Criminal Offense (conviction), and a Criminal Conviction takes away the right to confront the Parole officer and any witnesses adverse or otherwise.... Bailey's action caused the *Plaintiff to be denied the Right to procedural Due Process of Law at the Parole Revocation Hearing....*

(Opposition Aff., at ¶¶ 11 – 13 (emphasis in original).) As such, Preston fails to allege

---

**7.** Bailey seeks to introduce her job description as support for her motion to dismiss. (*See* Affidavit [of Crystal Bailey] in Support of Motion to Dismiss Amended Complaint dated July 19, 2001 ("Bailey Aff.") at ¶ 3, Ex. A, which are attached as Ex. C and D to the Nowve Aff.) Preston did not rely on, incorporate or otherwise refer to that document in his pleading. Nevertheless, because claims of qualified immunity essentially raise an issue of subject matter jurisdiction, and may re-

quire evaluation of the factual circumstances of the official's act, this matter would be better dealt with on a motion to dismiss under Fed.R.Civ.P. 12(b)(1). Accordingly, the Court will consider Ex. A to the Bailey Affidavit. Preston suffers no prejudice from the Court's decision because he addressed the facts raised in Bailey's Affidavit and its Exhibit A, in his two opposition briefs. *See also Tsai*, 137 F.Supp.2d at 280.

a violation of a right protected by the United States Constitution. First, Preston has not shown that he has a liberty interest in a grant of parole such that its denial is a violation of due process. *See Barna v. Travis,* 239 F.3d 169, 170 (2d Cir.2001) ("In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme.") Preston does not dispute that the Parole Decision was initiated and decided on the basis of charges unrelated to the Harassment Charges that were inaccurately certified by Bailey.

■ Secondly, it is settled that the Due Process Clause mandates certain procedural safeguards must be present before a revocation of parole may issue. *See Drayton v. McCall,* 584 F.2d 1208, 1209 (2d Cir.1978). The required procedures include a limited right to confront those witnesses who furnish evidence against the parolee and who volunteer to disclose their identity, "unless the hearing officer specifically finds good cause for not allowing confrontation." *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, (1972); *see also Drayton,* 584 F.2d at 1218–20; *Calhoun v. New York State Div. of Parole Officers,* 999 F.2d 647, 652 (2d Cir.1993). Yet Preston has not alleged he was denied any of the required procedural safeguards. He chose to proceed at the Hearing *pro se.* (Tr., at 2–3.) As already summarized, he raised the issue of the inaccurate Certificate. (*See supra,* discussion at Part I.) The Certificate did not form a basis for the revocation of parole. Preston does not identify what witnesses the Certificate, even if incorrect, prevented him from confronting at the Hearing. Nor did he identify how it prevented him from addressing any relevant issues with the administrative law judge presiding at the Hearing. Accordingly, the Court finds that Preston's constitutional rights were not violated.

In the absence of a clear constitutional violation, Bailey is entitled to qualified immunity and is immune from suit. The Court must dismiss Preston's claims against defendant Bailey on that ground.

## C. CLAIMS AGAINST BRONX LEBANON

### 1. *Section 1983*

■ To maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that he suffered a violation of a constitutional right and that the violation was committed under color of state law. *See* 42 U.S.C. § 1983; *Hadges v. Yonkers Racing Corporation,* 918 F.2d 1079, 1081 (2d Cir. 1990).

■ Traditionally, a defendant must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law for its conduct to constitute state action under 42 U.S.C. § 1983." *See West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Accordingly, a private entity's conduct may become so entwined with governmental policies, or so impregnated with a governmental character as to become subject to 42 U.S.C. § 1983. *See Kia P. v. McIntyre,* 235 F.3d 749, 755–57 (2d Cir.2000) (holding that to the extent that private hospital acted in furtherance of a child welfare statute, and not medical considerations, it may be held liable under 42 U.S.C. § 1983). The Supreme Court has articulated two tests to determine whether a private actor's conduct constitutes state action: a sufficiently close nexus and a symbiotic relationship. *See Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Jackson v. Metropolitan Edison Co.,* 491 U.S. 345,

351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Hadges,* 918 F.2d at 1079.

▮▮▮ Whether a regulatory scheme subjects private conduct to § 1983 liability is properly evaluated under the sufficiently close nexus standard. *See Hadges,* 918 F.2d at 1082 (citing *Jackson,* 419 U.S. at 351, 95 S.Ct. 449). Under the sufficiently close nexus standard, a court analyzes whether the state can be fairly held responsible for private conduct by virtue of the ties between the state and private actor. *See Blum,* 457 U.S. at 1004–1006, 102 S.Ct. 2777.

▮▮▮ Here, Bronx Lebanon is a private entity. Nevertheless, Preston asserts that Bronx Lebanon constitutes a state actor under § 1983 because (1) the Police Defendants sent the Minor to Bronx Lebanon for examination as a crime victim; (2) New York law obliges Bronx Lebanon to preserve evidence and make reports in suspected child abuse cases; and (3) a New York City Emergency Medical Services Ambulance Dispatch Center ("E.M.S.") is located on Bronx Lebanon's premises. Similar allegations that a private hospital collected evidence and made reports to police authorities were held to be insufficient to impose § 1983 liability on a private hospital. *See Thomas v. Beth Israel Hospital,* 710 F.Supp. 935, 940 (S.D.N.Y. 1989) ("The fact that [a private hospital is] complying with [New York law] by reporting suspected child abuse does not mean it acted under color of state law."). Preston's additional allegation regarding E.M.S. does not demonstrate a sufficiently close nexus, or suggest a symbiotic relationship, between Bronx Lebanon and the

State to warrant a finding of state action. Rather, it appears that Bronx Lebanon's actions were limited to the medical examination conducted by Garcia and the availability of two other doctors to serve as witnesses. Accordingly, Preston has failed to state a claim against Bronx Lebanon.

### 2. *Recast Claims*

In his opposition papers Preston recasts his federal claim as one for "deliberate indifference, malicious prosecution, false arrest, and false imprisonment" under New York state law (the "Recast Claims"). (Reply Opposition to Bronx Lebanon Hospital Reply Memorandum of Law, Dated: 12 November 2001, at 2.) Bronx Lebanon argues that the facts alleged by Preston cannot support any of these charges.

▮▮▮ First, Preston has not identified a legally cognizable claim for "deliberate indifference" under New York State law.[8] Secondly, "the elements of a false imprisonment claim are: '(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Kurschus v. PaineWebber, Inc.,* 16 F.Supp.2d 386, 396 (S.D.N.Y.1998) (citations omitted). The elements of a claim for "false arrest" are the same. *See Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994) ("To prove the elements of false arrest under New York law, plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.") (citations omit-

---

**8.** Preston cites case law discussing liability under § 1983 as setting forth the elements of the cause of action he calls "deliberate indifference." (*See* Affirmation in Opposition to Defendant City of New York Answer to

Amended Complaint ("Preston Aff."), at ¶ 8.) Accordingly, the Court finds that Preston has not stated a claim under New York law for "deliberate indifference."

ted). In support of these claims, Preston alleged that the "hospital's staff was deliberately indifferent through lack of training, screening and supervision. This caused the Plaintiff to undergo incarceration, false imprisonment, malicious prosecution and false arrest." (Insert.) Thus, he failed to allege how the medical examination of the Minor and the related record of it demonstrated that the hospital or the doctors acted with intent to cause his confinement. Further, in light of the statutory reporting scheme, it is improbable that Preston could allege such intent.

 The elements of malicious prosecution are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 392 (citations omitted). To show that a defendant continued a criminal proceeding, a plaintiff must show the defendant "played an active role in the prosecution." *Id.* Preston does not allege that Bronx Lebanon initiated a criminal proceeding or took an active role in it. Further, Preston again failed to allege any "actual malice" or intent on the part of Bronx Lebanon. As such, Preston has failed to state a claim against Bronx Lebanon for malicious prosecution.

Thus, because Preston failed to state a claim under state law against Bronx Lebanon, the Court dismisses the Recast Claims.

## D. *CLAIMS AGAINST THE INDIVIDUAL DOCTORS*

### 1. *Service of Process*

Bronx Lebanon notes, and the official record in this matter reflects, that Dr. Bailey and Jimmenez were not served in this matter. Bronx Lebanon suggests that the Court may dismiss Preston's claims against Dr. Bailey and Jimmenez for the

same reasons it should dismiss the claims against Bronx Lebanon, as those arguments apply with equal force to Dr. Bailey and Jimmenez. The Court agrees. (*See infra*, discussion at II.D.2.)

Bronx Lebanon also indicates that Garcia was never properly served and suggests that its motion for dismissal applies with equal force to the case against Garcia. The docket sheet in this matter indicates that service was effected on July 25, 2001, and that Garcia's answer was due on August 14, 2001. Preston requests a default judgment against Garcia based on Garcia's failure to answer or appear.

 Insufficiency of process may provide grounds for dismissal. *See* Fed. R.Civ.P. 12(b)(5); *Zen Music, Inc. v. CVS Corp.*, No. 98 Civ. 4246, 1998 WL 912102, at *4 (S.D.N.Y. Dec.20, 1998). Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy. *See Howard v. Klynveld Peat Marwick Goerdeler*, 977 F.Supp. 654, 658 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 844, 1999 WL 265022 (2d Cir.1999). Here, no challenge to sufficiency of process has been raised and the deadline to answer or assert an objection under Federal Rule of Civil Procedure 12(b)(5) has elapsed. Therefore, it appears that Garcia is in default. Nevertheless, and as Bronx Lebanon suggests, the Court agrees that the claims against Garcia fail on their merits for the same reason they fail against Bronx Lebanon and Drs. Bailey and Jimmenez.

### 2. *Statute of Limitations*

 Regardless of the issues concerning service of process and default, the Court addresses Bronx Lebanon's arguments, made on behalf of Drs. Bailey, Garcia and Jimmenez's (the "Individual Doctors"), that the statute of limitations has elapsed, thereby depriving this Court of

subject matter jurisdiction over Preston's claims against them. Section 1983 borrows state law limitations "where doing so is consistent with federal law." *Owens v. Okure*, 488 U.S. 235, 239, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). Thus, the Court applies New York's residual three-year statute of limitations to Preston's § 1983 claims. *See id.* at 251, 109 S.Ct. 573.

 Under Federal law, the statute of limitations begins to run at the time of the illegal act, when Preston knew or should have known of the injury. *See Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980). A § 1983 claim based on a malicious prosecution arises on the date that an unconstitutional conviction is invalidated. *See Woods v. Candela*, 47 F.3d 545, 546 (2d Cir.1995). A claim for false arrest accrues either (1) at the time of the arrest, if the false arrest did not provide the prosecution with evidence that would have been key to a conviction, or (2) on the date the criminal proceeding was dismissed against him, if no such evidence was obtained by the false arrest. *See Covington v. City of New York*, 171 F.3d 117, 119 (2d Cir.1999).

Preston's § 1983 claims against the Individual Doctors sound in two legal theories: malicious prosecution and false arrest. Factually, they are based on Garcia's examination of the Minor at Bronx Lebanon on January 5, 1998, and the inclusion of Drs. Bailey and Jimmenez on a witness list in the prosecution that was ended by the Acquittal.

Preston was instructed to identify any Doe defendants before the statute of limitations expired. *See* Dismissal Dec., at 8. Preston did not identify the Individual Doctors until April 3, 2001. To the extent that Preston asserts a § 1983 claim against Drs. Bailey, Garcia and Jimmenez for malicious prosecution, the statute of limitations commenced on July 1, 1999. Because Preston named the Individual Doctors on April 3, 2001, his claims are not barred by the statute of limitations.

By contrast, to the extent that Preston asserts a § 1983 claim for false arrest, his claims are barred. In the Second Amendment Complaint, Preston provides a detailed account of his arrest and the police's investigation that culminated in the Acquittal. According to Preston, in their investigation the police and City Defendants relied on evidence obtained from sources other than Preston's arrest. Thus, the three year statute of limitations on Preston's § 1983 claim, to the extent that it is based on false arrest, elapsed on January 5, 2001. The Court dismisses these claims for want of jurisdiction. *See Owens*, 488 U.S. at 251, 109 S.Ct. 573; *see also Johnson v. Hill*, 965 F.Supp. 1487, 1488–89 (E.D.Va.1997) (dismissing complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim on which relief may be granted where statute of limitations had elapsed).

### 3. *Section 1983*

 Preston's § 1983 claims against the Individual Doctors fail because they are against private individuals who were not acting under color of state law. Preston has made no allegations that the Individual Doctors are state actors. As discussed above, Preston has not met either the sufficiently close nexus or symbiotic relationship tests as to Bronx Lebanon, the Individual Doctors' employer. (*See supra*, discussion at Part II.C.1.) Accordingly, the Court dismisses Preston's claims against the Individual Doctors on their merits.

### 4. *Recast Claims*

Preston also asserts the Recast Claims against the Individual Doctors. He argues that they "were listed to appear at the trial" which was terminated on July 1,

1999 by the Acquittal, and thus that the statute of limitations on the Recast Claims has not elapsed. (Affirmation in Opposition to Motion to Dismiss by Bronx Lebanon Hospital, at ¶ 7.)

Preston's argument fails because under New York law, the residual statute of limitations does not apply to these state claims; rather, the statute of limitations for false imprisonment and malicious prosecution is one year. *See* New York Civil Practice Law and Rules § 215(3); *see also von Bulow v. von Bulow*, 657 F.Supp. 1134, 1138 (S.D.N.Y.1987). Accordingly, and regardless of whether Preston could state a claim on these grounds, the statute of limitations elapsed by January 5, 1999 and July 1, 2000, both dates prior to his naming of the Individual Doctors. Therefore, the Court lacks jurisdiction over the Recast Claims and must dismiss them.

Finally, Preston argues that his amendment to the Amended Complaint that identified the Individual Doctors relates back and thereby falls within the statute of limitations. Federal Rule of Civil Procedure 15(c) permits an amendment to relate back if it was due to a mistake. Rule 15(c) does not allow the relation back of an amendment based on a plaintiff's "failure to identify individual defendants when the plaintiff knows that such defendants must be named." Fed.R.Civ.P. 15(c). Here, Preston was aware of the Individual Doctors' identities since his trial because they were listed on the prosecution's witness list. In light of the Dismissal Decision and Preston's delay in naming the Individual Doctors, then, the Court finds that Preston's April 3, 2001 amendment that named the Individual Doctors complaint does not relate back to his original filing date.

### E. CLAIMS AGAINST THE STATE OF NEW YORK

▆▆▆ The Eleventh Amendment of the United States Constitution bars federal courts from hearing all § 1983 claims for legal or equitable relief brought by citizens against unconsenting states and state agencies. *See Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Quern v. Jordan*, 440 U.S. 332, 341–45, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). New York is an unconsenting state. *See Trotman v. Palisades Interstate Park Commission*, 557 F.2d 35, 39–40 (2d Cir.1977); *See also Leonhard v. United States*, 633 F.2d 599, 621 (2d Cir. 1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981). Indeed the Eleventh Amendment also bars suit against state officials acting in their official capacity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Accordingly, the Court lacks subject matter jurisdiction over the matter and dismisses Preston's claims for relief against the State of New York pursuant to 28 U.S.C. § 1915.

### F. CLAIMS AGAINST THE CITY OF NEW YORK

#### 1. Municipal Liability Under § 1983

▆▆▆ The Corporation Counsel for the City of New York filed an answer to Preston's complaint on behalf of the City Defendants. Under *Monell v. Department of Social Services*, 436 U.S. 658, 670, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a city may be sued as a person under § 1983. To establish liability, a plaintiff must demonstrate that a municipal policy results in a constitutional deprivation. *See id; See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Preston was apprised of this requirement. *See* Dismissal Dec., at 3–4. Nevertheless, the Complaint remains devoid of such allegations. Accordingly, the Court dismisses the claims against the City of New York.

## 2. *Agencies of the City of New York*

■ Furthermore, as summarized in the Dismissal Decision, claims against the City of New York's agencies, including the NYPD, are deemed to be claims against New York City. *See* Dismissal Dec., at 4 (citing New York City Code & Charter § 396 and *Kramm v. City of New York*, No. 96 Civ. 4918, 1997 WL 362448, *2 (S.D.N.Y. June 30, 1997)); *see also East Coast Novelty Co. v. City of New York*, 781 F.Supp. 999, 1010 (S.D.N.Y.1992). Likewise, the ACS is an agency of the City of New York and not a separate suable entity. *See Pimentel v. City of New York*, No. 00 Civ. 326, 2000 WL 1576871, at *2 (S.D.N.Y. Oct.23, 2000). Accordingly, the Court dismisses Preston's claims against NYPD and ACS.

## 3. *Prosecutorial Immunity*

■ As also discussed in the Dismissal Decision, prosecutorial immunity protects prosecutors from civil lawsuits based on acts committed within the scope of their official duties that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir.1996). The City Defendants raised prosecutorial immunity as an affirmative defense to Preston's claims against them. (*See* Answer to Amended Complaint, at ¶ 13.) In response, Preston filed an affidavit that repeated and amplified his claims against the City Defendants. Preston stated he would show how "Defendants Sobel, Mairs [sic] and Woo are not entitled to Qualified or Absolute immunity nor is the City of New York." (Preston Aff., at 24.) Preston did not provide factual support for that assertion.

■ Courts use a functional approach to determine whether a prosecutor's act is taken as an advocate and therefore absolutely immune from suit. *See*

*Doe*, 81 F.3d at 1209. The decision to commence a prosecution, including the decision of what charges to make, is intimately associated with the judicial process. *See Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir.1993). By contrast, a prosecutor may be protected by qualified immunity against suit for acts that are administrative or investigative in nature. *See Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.1981). Here, there can be no doubt that Sobel and Mares are immune for their decision to prosecute and continue the prosecution because they acted as advocates of New York State. The Court thus dismisses Preston's claim against Sobel and Mares under 28 U.S.C. § 1915 for failure to state a claim. Likewise, Preston's claim against Woo, to the extent it is based on his commencement and continuation of the Harassment Charges, is dismissed.

■ Preston's claim against Woo for sending the Certificate to the Administrative Law Judge for use during the Hearing must also be dismissed. Although, arguably Woo may have acted as an advocate of the State, his act may fairly be characterized also as administrative. Under either rubric, Woo is immune from suit. If the former, his immunity is absolute. If the latter, the Court must consider whether his acts are protected by qualified immunity. (*See supra*, discussion at Part II.B.)

The first question is whether Woo violated Preston's constitutional right by submitting the Certificate to the Hearing. For the reasons discussed above, *see supra*, discussion at Part II.B., no violation of Preston's constitutional rights flowed from the submission of the Certificate at the Hearing. As such, Woo is entitled to the protection of qualified immunity against suit. The Court dismisses Preston's claims against Woo.

### G. CLAIMS AGAINST MATOS, WHITE, MARCHMAN AND QUINTANA

According to the docket sheet in this matter, Captain Rosario returned a receipt of service for Matos and White on August 31, 2001. Marchman was served on July 24, 2001 by personal service on Sergeant McDonald. Quintana was served by personal service on May 18, 2001. Although it may not have been immediately apparent on its face, the answer filed by Corporation Counsel also applied to Marchman and Quintana. (*See* Letter to the Court from Zachary A. Cunha, dated June 6, 2002.) Preston requests that the Court enter a default judgment against defendants Matos, White, Marchman and Quintana. (*See* Preston Aff., at 15.) The Court denies Preston's request in light of Marchman and Qunitana's timely answer.

Preston sues Matos, White, Marchman and Quintana as City officials and as individuals. (*See* Compl., at 6; Letter to the Court from Preston, received on June 17, 2002.) To the extent that Preston asserts § 1983 claims against City employees in their official capacities, the Court treats the claims as made against the City of New York. *See Frank*, 1 F.3d at 1326 (citing *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) and *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Accordingly, the Court dismisses these claims. (*See supra*, discussion at Part II. E.)

██ Preston's claims against Matos, White, Marchman and Quintana as individuals under § 1983 and state law remain. "To establish personal liability in a 1983 action, it is enough to show that the offi-

cial, acting under color of state law, caused a deprivation of a federal right." *Hafer v. Melo*, 502 U.S. at 26, 112 S.Ct. 358. A plaintiff must provide specific allegations of the deprivation. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).

#### 1. Claims Against Matos and White

Preston asserts claims against Matos and White, employees of the New York City Administration for Children's Services, under 28 U.S.C.1983 in their official and individual capacities in connection with their roles in his January 5, 1998 and July 5, 1999 arrests. Preston alleges in his amended complaint that Matos and White instigated the January 5, 1998 arrest through the filing of an unwarranted criminal complaint based upon the allegations of the Minor. (Am.Compl., at ¶¶ 6 and 7.) Preston further alleges that the July 5, 1999 arrest was initiated in retaliation for the Acquittal. (Second Am.Compl., at 5.)

##### a. Immunity

██ Because Preston seeks monetary damages against defendants Matos and White, an issue arises with respect to immunity pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

The ACS is a child protective service within the meaning of New York Social Service Law ("SSL") §§ 423 and 424. *See Lara v. City of New York*, 187 Misc.2d 882, 726 N.Y.S.2d 217, 222 (N.Y.Supp.2001). Therefore, Preston's claims against Matos and White, both employees of ACS, are subject to applicable provisions of the SSL.

██ SSL § 419 (" § 419") accords persons employed in child protective services qualified immunity from civil and criminal liability resulting from reporting incidents of child abuse.[9] The immunity exists as

---

9. Section 419 provides, in relevant part, that: Any person ... participating in good faith in the providing of a service pursuant to section four hundred-four of this title ... shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions ... provided such person ... was acting in the discharge of

long as such individuals are acting within the scope of their employment and do not engage in willful misconduct or negligence. *See Van Emrik v. Chemung,* 220 A.D.2d 952, 632 N.Y.S.2d 712, 714 (App.Div.3d Dep't 1995). The underlying policy for immunizing persons engaged in child protective services under SSL § 424 (" § 424"), is to encourage the reporting of child abuse situations, and thereby, afford children greater protection. *Id.,* at 714. Immunity pursuant to § 419 extends to all acts undertaken by persons providing child protective services under § 424. *See Lara* 726 N.Y.S.2d at 223 (providing that a 1983 amendment to the statute extended immunity to all acts of persons acting pursuant to § 424).

Preston contends that Matos and White were negligent in reporting the alleged rape because they must have known there was a possibility of false reports. (Second Am.Compl., at ¶ 6.) However, reporting the suspected child abuse coincides with the appropriate measures that child protective services employees acting pursuant to § 424 are supposed to undertake. Section 424 provides, in relevant part, that if "the child protective service ... determines that the best interest of the child require[s] family court or criminal court action, [it could] initiate the appropriate family court proceeding or make a referral to the appropriate district attorney, or both."

 Under the SSL, conclusive proof of child abuse is not a requisite threshold

to trigger reporting under § 424. *See Isabelle V. v. City of New York,* 150 A.D.2d 312, 541 N.Y.S.2d 809, 809 (App.Div.1st Dep't 1989); *see also Kempster v. Child Protective Services of the County of Suffolk,* 130 A.D.2d 623, 515 N.Y.S.2d 807, 809 (App.Div.2d Dep't 1987)(holding that reporting requirements that are afforded immunity under § 419 are not predicated on actual or conclusive evidence of abuse or maltreatment). In *Isabelle,* hospital employees, pursuant to their obligations under SSL § 413 (" § 413"), reported a suspected sexual abuse of two minor girls to the New York City Bureau of Child Welfare, which then removed the children from the parents' custody. The *Isabelle* court held that the hospital acted reasonably and was entitled to qualified immunity under § 419, despite subsequent laboratory results that ruled out sexual abuse. *See Isabelle,* 541 N.Y.S.2d at 809. Therefore, contrary to what Preston alleges, Matos and White did not need actual or conclusive evidence that he raped the Minor prior to their undertaking to report the matter pursuant to § 424.

Moreover, SSL provides a statutory presumption that actions taken to protect a child are made in good faith. *Van Emrik,* 632 N.Y.S.2d at 714.[10] Only a persuasive showing of bad faith will permit a rebuttal of the presumption of good faith. *Id.* at 714. Preston's allegations do not rebut this statutory presumption. Preston's main contention is that Matos and White should have known that this particular in-

---

their duties and within the scope of employment, and that such liability did not result from willful misconduct or gross negligence of such person.

**10.** In relevant part SSL § 419 provides:

For the purpose of any proceeding, civil or criminal, *the good faith* or any such person, official, or institution required to report cases of child abuse or maltreatment or providing a service pursuant to section four

hundred twenty-four or the disclosure of child protective information in compliance with sections twenty, four hundred twenty-two and four hundred twenty-two-a of this chapter *shall be presumed,* provided such person, official or institution was acting in discharge of their duties and within the scope of their employment, and such liability did not result from the willful misconduct or gross negligence of such person, official or institution (emphasis added).

cident was falsely reported because, as employees of ACS, they were generally aware that a possibility existed of false allegations being reported. (Compl., at ¶ 6). This argument does not show that Matos or White had actual knowledge, or a reasonable basis for knowing that the Minor's claim was false.

Preston further asserts that Matos knew that the claim was false, stating that "for she knew to a moral certainty that the story told to her was false for she, herself, is a woman." (Opposition Aff., at 17.) This argument is flawed in several ways. First, there is no logical connection between being a woman and the knowledge of the falsity at issue. Second, even construing Preston's allegations to raise the strongest argument they support, they still fail to show that Matos knew the claim was false and proceeded nonetheless with the criminal report.

Furthermore, the facts demonstrate that Matos and White had a substantial factual basis for their suspicion because the mother of the Minor and the Minor herself came forward to report the incident. *See Kubik v. New York State Dep't of Soc. Serv.*, 244 A.D.2d 606, 664 N.Y.S.2d 365, 368 (App.Div.3d Dep't 1997) (concluding that there can be no bad faith where there is substantial factual basis for a police officer's suspicion of maltreatment of a minor, because the minor reported the abuse to the officer). The Minor's reporting of the incident provided sufficient factual basis giving rise to a reasonable suspicion of child abuse, which is all that is required to trigger mandatory reporting pursuant to § 424. *See Isabelle* 541 N.Y.S.2d at 809 (concluding that mandated reporters must act on their reasonable suspicions and the law allows them a degree of latitude to err on the side of protecting

children). Therefore, Preston's allegation that the reporting was not warranted because of the lack of conclusive proof does not rebut the statutory presumption of good faith.

Preston also asserts claims against Matos and White in their individual capacity. However, nowhere in the papers are there allegations showing that Matos and White acted outside the scope of their jobs. Rather, the allegations focus solely on Matos and White's actions undertaken in their capacity as employees of ACS. (Compl., at ¶¶ 6, 14; Opposition Aff., at 17.) Accordingly, Matos and White have qualified immunity pursuant to § 419, and the Court dismisses Preston's claims against them pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

b. *Frivolous*

 An action is frivolous if "it lacks an arguable basis either in the law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "A district court may *sua sponte* dismiss a case filed *in forma pauperis* 'if satisfied that the action is frivolous or malicious.'" *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir.1990). "[C]laims in which the defendants are clearly immune from suit or claims seeking redress for non-existent legal-interest would be examples of claims which would be considered indisputably meritless and properly dismissed under section 1915(d)."[11] *Id.* at 606. Because Preston has failed to allege a cognizable theory upon which Matos and White would not be entitled to immunity under § 419, his claims against the case workers may also be dismissed as frivolous pursuant to 28 U.S.C. § 1915 and 1915A.

11. The Second Circuit in *Nance* applied 28 U.S.C. § 1915(d) prior to the enactment of the PLRA. As discussed *supra*, at note 5, the PLRA merely re-designated § 1915(e)(2)(B), and the case law addressing the meaning of frivolousness has remained the same.

2. *Claims against Marchman and Quintana*

Preston asserts claims against Marchman and Quintana under 42 U.S.C. § 1983, in their official and individual capacities, for malicious prosecution and false imprisonment by the police officers, arising out of the January 5, 1998 and July 5, 1999 arrests.

a. *Malicious Prosecution and False Prosecution*

■ Preston asserts the Recast Claims against Marchman and Quintana. As discussed above, at Part II.C.2., an essential element of the Recast Claims at issue is that the confinement was not lawful or privileged. Therefore the Court must determine whether the arrest was made with probable cause.

■ Preston asserts that the January 5, 1999 arrest was made without probable cause. (Compl., at ¶ 7.) The basis of his argument is that the arrest was made solely upon the Minor and her mother filing a criminal complaint, and that the arrest occurred prior to the physical examination of the Minor at Bronx Lebanon. (Compl., at ¶ 7.) Under New York law, a Grand Jury indictment creates the presumption that the arrest was procured with probable cause. *See Bernard v. U.S.*, 25 F.3d 98, 104 (1994). To rebut the presumption, a plaintiff must show that "the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* at 104.

Preston acknowledges that he was indicted by a Grand Jury for the alleged December 21, 1997 rape of the Minor approximately on April 28, 1999; the indictment was numbered 2703–99. (Compl., at ¶¶ 18, 26, 27; Second Am.Compl., at 4; 2d. Supplementary Violation of Release Report, dated November 8, 1999.) Preston has not pled facts to rebut the presumption of probable cause for the January 5,

1998 arrest. Accordingly, the Court dismisses Preston's claims for malicious prosecution and false imprisonment based on the January 5, 1998 arrest pursuant to 28 U.S.C.1915(e)(2)(B)(ii) for failure to state a claim.

The Supreme Court has held that "[a] claim for damages bearing relationship to a conviction or sentence that has *not* been [ ] invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Preston was convicted based on his July 5, 1999 arrest, and sentenced. (Second Am.Compl., at 5.) Accordingly, the Court dismisses Preston's claims against Marchman and Quintana for malicious prosecution and false imprisonment based on the July 5, 1999 arrest under 28 U.S.C. 1983 pursuant to 28 U.S.C.1915(e)(2)(B)(ii) for failure to state a claim.

Preston asserts that his claims are also made against Marchman and Quintana in their individual capacities under § 1983. However, nowhere in his papers does he allege that Marchman and Quintana acted outside the scope of their employment. Rather, Preston's allegations solely focus on acts taken within the capacity of their employment as police officers. (Second Am.Compl., at ¶ 7.) Accordingly, the Court dismisses Preston's claims against Marchman and Quintana for acts committed in their individual capacities pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### III. *CONCLUSION*

For the foregoing reasons, it is hereby

ORDERED that defendant Bailey's motion to dismiss is granted; and it is further

ORDERED that defendant Bronx Lebanon's motion to dismiss is granted; and it is further

**474**

ORDERED that plaintiff Preston's claims against defendants the State of New York, the City Defendants, Garcia, Dr. Bailey and Jimmenez, are dismissed with prejudice; and it is finally

ORDERED that the Clerk of Court close this case.

**SO ORDERED.**